STATE *v.* BANKERS TRUST COMPANY ET AL.

January Term, 1933.

Present: SLACK, MOULTON, THOMPSON, and GRAHAM, JJ., and DAVIS, Supr. J.

Opinion filed February 7, 1933.

*Wayne C. Bosworth, T. Hovey Gage* (of Worcester, Mass.) and *Frank W. Grinnell* (of Boston, Mass.) for the appellants.

*J. Ward Carver* and *Guy M. Page* for the appellee, the University of Vermont.

*Jeremiah M. Evans* and *White & Case* (of New York City) and *Henry DeLand Strack* (of New York City) of counsel, for Trustee, Bankers Trust Company.

THOMPSON, J. On August 12, 1919, James B. Wilbur executed an indenture of trust, hereafter called the original indenture, with the Bankers Trust Company as trustee. The trust funds consisted principally of stocks, bonds, and mortgages. By the first article of the indenture the trustee is directed to receive, hold, invest, and reinvest the property transferred to it by Mr. Wilbur and to pay the net income thereof to him dur-

ing his life. He also reserved to himself the absolute power to "modify, or alter in any manner, or revoke, in whole or in part, this indenture and the trusts then existing, and the estates and interests in property hereby created."

In articles second to sixth, inclusive, the donor directs that upon his death the trustee shall set aside five several trust funds from the securities in its hands and pay the income thereof to certain persons during their respective lives, with remainder over to the University of Vermont.

In article eighth, the trustee, immediately after setting aside the respective trust funds provided for in articles second to sixth, inclusive, is directed to divide the remainder of the trust property into two equal parts and to pay one-half of the same to the Art Institute of Chicago, and, by article ninth, to pay the other half to the Field Museum of Natural History.

After the execution of the original indenture and prior to March 5, 1928, Mr. Wilbur, under the power reserved, executed ten instruments which altered, modified, and revoked certain provisions of the indenture and particularly those of article eighth. On October 10, 1925, when the last of those instruments had been executed, article eighth provided that immediately after setting aside the respective trust funds provided for in articles second to sixth, inclusive, the trustee should pay over, transfer, and deliver securities of the par value of $650,000 to six societies and institutions. Among these societies were the American Antiquarian Society, the Colonial Society of Massachusetts, and the Massachusetts Historical Society, the appellants in this proceeding, who were made beneficiaries to the amounts respectively of $200,000, $25,000, and $100,000, and the University of Vermont, the appellee in this proceeding, who was made a beneficiary to the amount of $200,000. Article ninth had been modified so that it provided that the remainder of the trust fund should be paid to the University of Vermont.

No other changes were made in the original indenture until March 5, 1928, when Mr. Wilbur and the Bankers Trust Company, as trustee, executed an instrument which he termed, and which we will call, the supplemental indenture. No changes had been made in this instrument when Mr. Wilbur deceased on April 28, 1929. Provisions for the disposition of the entire trust fund after Mr. Wilbur's death are made in this instrument. The appellants are not named as beneficiaries, nor is any men-

tion made of them. The twenty-eighth article reads: ''This trust has been accepted by the Trustee in the State of New York, and all questions pertaining to its validity, construction and administration shall be determined in accordance with the laws of that state.''

The decree states, so far as the issues here are concerned, that the supplemental indenture is the now-existing modified form of trust indenture; that the interests and estates created by the original indenture, as modified, were divested by the execution and delivery of the supplemental indenture; that the only rights, interests, and estates in and to the corpus and income of the trust are such as are created under the supplemental indenture; and that that instrument expresses the terms of a valid and subsisting trust. The legal effect of the decree is that the gifts made to the appellants by the original indenture were, as matter of law, revoked by the provisions of the supplemental indenture.

The appellants contend that the chancellor erred, in that under the law of New York or of this jurisdiction, whichever governs the interpretation of the original indenture, as altered and modified, Mr. Wilbur created a vested interest in remainder in them in the trust funds in the hands of the trustee to the extent of the several sums specified as of the date when they were designated donees, the same to be paid before the remainder of the trust funds disposed of by article twelfth of the supplemental indenture can be ascertained; and that the respective gifts to them remain unrevoked, unaltered, and unmodified. They raise the question by appropriate exceptions to certain findings, to the refusal of the chancellor to find as requested, and by their appeal from the decree. This is the only question before us for consideration.

Many decisions of the highest court of New York were received in evidence at the hearing below on which the chancellor based certain findings of the law of New York as applicable to this case. Those decisions are a part of the record before us. The appellants contend that the findings of the law of New York are merely rulings of law; ''that all the New York decisions, whether received in evidence or not, were *in this particular case,* brought within the judicial notice of the Court by the provisions of article 28 of the supplemental indenture which incorporates by reference the whole New York law of construction *as part of*

*the express terms of the trust,* and that the chancellor's 'findings' or rulings are therefore open for review on appeal as fully as if he were ruling on Vermont law.''

We notice this contention because the appellants have given it so much attention in their briefs. It raises no question for consideration because neither the appellants nor the appellee excepted to any of the findings by the chancellor of the law of New York (see *Tarbell* v. *Grand Trunk Railway Co.,* 96 Vt. 170, 172, 118 Atl. 484, 34 A. L. R. 1444), and they agree that the findings state such law correctly.

The chancellor found that it is the law of New York that an original indenture of trust and all alterations, modifications, and revocations thereof are to be taken and construed together as parts of one and the same instrument. He also found that it is the law of that jurisdiction that an unqualified gift under a trust instrument establishes a vested interest in the donee forthwith upon the execution of the instrument making the gift, subject, however, to being revoked by the donor if the latter reserves the power of revocation.

The first part of finding 29 reads as follows: ''It is the law of New York that a provision once created establishes a vested interest, and it is not to be eliminated except by language as clear and decisive as the language creating said provision.'' The appellants contend that this part of the finding states the law by which this case is to be determined.

It is evident that the provisions of articles second to sixth, inclusive, of the supplemental indenture are in substitution for the provisions of the same numbered articles in the original indenture as they are for the same beneficiaries and no reference is made to the original indenture. In article eighth the names of the appellants and the appellee are omitted and three new beneficiaries are introduced. That article also provides that the gifts shall be made in cash or in securities at their market value instead of in securities at their par value as provided in article eighth of the original indenture. Articles ninth and tenth provide for new gifts. Article eleventh provides for a gift to the University of Vermont, which, it is evident, is in substitution for the gift made to it in article eighth of the original indenture. Article twelfth provides:

"The balance of all the funds, and the securities in which the same may have been invested, remaining in the hands of the Trustee after making the foregoing dispositions, shall be .paid unto the Trustees of the University of Vermont * * * *, to be applied to the uses and purposes of the said University."

The appellants contend that since the gifts to them are not expressly revoked, and the words "foregoing dispositions" in article twelfth do not refer specifically to the dispositions of the trust fund previously made in the supplemental indenture, the words "balance * * * * after making the foregoing dispositions" are so general and vague that they must, under the rule of construction stated in the first part of finding 29, be interpreted as referring to all the unrevoked "dispositions" in all the documents constituting the trust instrument "which are to be construed as one consistent instrument"; that such "vague, general words" are not in any sense words of revocation of specific vested interests nor substitution for them.

The appellants have analyzed the words and phrases used by Mr. Wilbur in the first ten modifying instruments and they contend that such words and phrases establish a standard of construction by which the provisions of the supplemental indenture should be construed, and that, when they are so construed, the gifts to them stand unrevoked. This contention cannot be sustained.

A trust instrument is to be construed so as to give effect to the intent of the grantor as manifested by the language used, and if his words are plain and unambiguous there is no necessity for judicial interpretation.

The chancellor, in finding 29, after finding that a vested interest is not to be eliminated except by language as clear and decisive as that creating it, found that the law of New York is:

"No technical rules of construction, no artificial analysis of language used, may defeat intention where that intention is manifest in the language of the instrument itself. Where a grantor or testator clearly discloses the sense in which he intended the words he has used should be under-

> stood, the courts construe them in no other sense,
> though such use be inartificial or even inaccurate
> according to the dictionary.''

This part of the finding is the language used by Judge Lehman in *Farmers' Loan & Trust Co.* v. *Callan*, 246 N. Y. 481, 487, 159 N. E. 405, when construing the provisions of a trust instrument. The appellants say that the question in that case was entirely different from the one presented by the Wilbur trust instrument. The facts of the two cases may be different, but Judge Lehman was simply stating the rule of construction which Judge Cardozo said in *Matter of Buechner*, 226 N. Y. 440, 123 N. E. 741, 742, is ''the primary one, to which all others are subordinate, that the intention of the testator (or grantor) is to be sought in all his words, and when ascertained is to prevail.''

In *Central Union Trust Company* v. *Trimble*, 255 N. Y. 88, 93, 174 N. E. 72, 73, the court said:

> ''Processes of construction may not be resorted
> to for the purpose of reading into the trust deed
> an intention not expressed or legitimately to be
> implied from the language used when construed
> in the light of the surrounding circumstances. We
> are to search, not for the probable intention of the
> settlor merely, but for the intention which the trust
> deed itself, either expressly or by implication, de-
> clares. We are to ascertain the intention from the
> words used and give effect to the legal conse-
> quences of that intention when ascertained.''

To the same effect are *Bancroft* v. *Cook*, 264 Mass. 343, 349, 162 N. E. 691; *Sandford's Admr.* v. *Sandford*, 230 Ky. 429, 435, 20 S. W. (2d) 83; *Woods* v. *Woods*, 105 N. J. Eq. 205, 210, 147 Atl. 506; *Crown Company* v. *Cohn*, 88 Ore. 642, 172 Pac. 804.

The language in which the supplemental indenture is expressed is as clear and decisive as that of the original indenture. So far as it provides for the disposition of the trust funds, it is, in all material respects, the same as that of the original indenture, except the designation of beneficiaries in article eighth.

It is apparent that Mr. Wilbur desired to further modify the original indenture, and to restate the whole indenture, as last modified, in one instrument. He states in the preamble in the supplemental indenture that he "now desires to further modify the provisions of said trust and intends that the following instrument," *i.e.*, the supplemental indenture, "shall be taken as the modified form of indenture now in force." He then states that "pursuant to the power reserved by him in said indenture of August 12, 1919," he "does provide that the following provisions shall be taken as accepted by the Trustee as the modified form of Trust Indenture, and the Trustee is directed to hold, manage and dispose of the trust funds as herein provided, namely:" He then disposes of the entire trust fund; and reserves to himself the same power of modification, alteration, and revocation as is reserved by article thirteenth of the original indenture.

The supplemental indenture is complete in itself in that, in addition to providing for the disposition of all the trust funds, and reserving the power of revocation, it also makes full provision for the control, investment, and management of the trust, without reference to any of the provisions of the original indenture.

It is evident from the clear and explicit language used in the supplemental indenture that it was the purpose of Mr. Wilbur to substitute that instrument for the original indenture, and that it was his intention "that the only rights, interests and estates in and to the corpus and income of the trust are such rights, interests and estates as are created under said supplemental indenture," as stated by the chancellor in the decree.

It also appears clearly from the language of the supplemental indenture that when Mr. Wilbur used the words "the foregoing dispositions" in article twelfth, he referred only to the dispositions of the trust funds previously made in that instrument.

Since the supplemental indenture disposes of all the trust funds it is impossible for any of the dispositions made by the original indenture as modified to stand, and they are revoked. *Newcomb* v. *Webster*, 113 N. Y. 191, 21 N. E. 77.

If we were to construe the original indenture, as modified, and the supplemental indenture as parts of one and the same instrument, as the appellants contend they should be con-

strued, the result would be the same. The rule is that if an instrument contains repugnant gifts in separate clauses, the gift contained in the later clause shall stand. Applying that rule in the instant case, we would be compelled to hold that the disposition of all the trust funds in the supplemental indenture is a complete revocation of the gifts made in the original indenture, as modified. *Newcomb* v. *Webster, supra.*

We have given all the questions raised by the appellants our careful consideration, and we find no error in the proceedings below.

*Decree affirmed with costs, and cause remanded.*