James W. BELL, Jr., Executor of the
Estate of Richard J. Bell, Deceased,
Plaintiff-Appellant,

v.

Ruth GARCIA f/k/a Ruth E. Bell, and
General American Life Insurance Co., a
corporation and Reliance Insurance
Company, a corporation and the City of
St. Louis, a municipal corporation, De-
fendants-Respondents.

No. 43604.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 4, 1982.

Motion for Rehearing and/or Transfer
Denied Sept. 17, 1982.

Application to Transfer Denied
Oct. 18, 1982.

Edward E. Murphy, Jr., Clayton, for plaintiff-appellant.

Terrence F. Pyle, Tipton, James W. Wilson, Joseph L. Leritz, St. Louis, for defendants-respondents.

PUDLOWSKI, Judge.

This is an appeal from a judgment entered by the Circuit Court, City of St. Louis for the respondent, Ruth Garcia, and against the appellant, James W. Bell, Exec-

utor of the Estate of Richard J. Bell. The judgment was entered pursuant to respondent's motion for a summary judgment, which was sustained by the trial court. The facts are as follows.

Richard J. Bell was an employee of the City of St. Louis from 1971 until his death, September 3, 1979. As a city employee, there were a number of insurance and benefits programs available to the decedent. When decedent began work in 1971 he was covered by medical insurance and by group life insurance. The life insurance was written by General American Life Insurance Company. Furthermore, decedent participated in a retirement benefits program. In 1971 decedent designated his mother, Dorothy S. Bell, and his father, James W. Bell, as beneficiaries under the life insurance policy and the retirement benefits program.

Decedent married Ruth Garcia sometime in 1972. On February 1, 1973, decedent changed the beneficiary of both the life insurance policy and the retirement program. The new beneficiary was Ruth E. Bell, the former Ruth Garcia. Decedent also applied for optional dependent life and medical insurance for Ruth Bell. Finally decedent applied for accidental death insurance on his life naming Ruth Bell as the beneficiary. The latter accidental death insurance policy was written by Reliance Insurance Company.

Soon thereafter the decedent and respondent experienced marital problems. In 1974 respondent retained an attorney, and instituted dissolution proceedings. Decedent was not represented by counsel. Respondent's attorney drafted a stipulation agreement in preparation for the dissolution and both parties signed the agreement on November 21, 1974. In the agreement respondent received an automobile plus maintenance payments of $5,000.00 per year. In consideration of the automobile and maintenance respondent released:

> ... each and every right that she presently has in any of the property of the [Richard J. Bell] or any of the property that he may have inherited in the past, or will or may inherit in the future and any

property that he owns as separate property or marital property and/or any other property, policies personal or combined property, in which [Ruth Bell] may have a right therein.

This stipulation was filed on December 9, 1974, in the circuit court in which the dissolution action was pending.

On that same date a judgment was rendered dissolving the marriage of Richard and Ruth Bell. The court's order restored respondent's maiden name, "Garcia", and she was awarded maintenance in the amount specified in the stipulation agreement. The dissolution order made no reference to the stipulation agreement and there was no division of the marital property.

Following the divorce in 1974, decedent made no attempt to change the beneficiary designated under the insurance policies and retirement program. Ruth Bell remained the designated beneficiary at the time of Richard Bell's death on September 3, 1979. In 1976, however, decedent executed a consolidated enrollment form made available by the benefits office of the City of St. Louis for changing employee insurance coverage. The transcript reveals that this was the only enrollment form, covering the interests at issue here, executed by decedent between the divorce and his death. In the consolidated enrollment form decedent discontinued the optional dependent life and medical insurance benefits for respondent. Decedent continued participation in the accidental death insurance policy issued by Reliance Insurance Company. The beneficiary designation in the consolidated enrollment form applied to both the life insurance policy and the accidental death insurance policy. It did not apply to death benefits payable under the City of St. Louis employee retirement program.

The effective date of the consolidated enrollment form was October 24, 1976 and apparently it was signed by decedent on October 27. Although the respondent began using her maiden name "Garcia" in 1974, the consolidated enrollment form designated "Ruth Bell", or decedent's wife, as the beneficiary. Also, the consolidated en-

rollment form incorrectly listed respondent's address.

Following the death of Richard J. Bell, the executor of the estate, James W. Bell filed suit seeking payment of the insurance proceeds and the retirement system death benefits to the estate of Richard Bell. In Counts I, II and III of the complaint the appellant admits that respondent was originally the designated beneficiary under the insurance policies and retirement system, but alleges that respondent waived and released her rights as beneficiary in the stipulation agreement signed in 1974. In Count IV the appellant asserts respondent's waiver of her rights in 1974 as beneficiary of the insurance policies, and further contends that there was a mutual mistake by decedent and the City of St. Louis in the designation of respondent as the beneficiary of said policies in the consolidated enrollment form executed in 1976. As a result of the mutual mistake appellant prays that the consolidated enrollment form executed in 1976 be disregarded, and the proceeds due on the insurance policies be paid to the estate. After some discovery in this matter the respondent filed two motions for summary judgment covering all four counts of appellant's petition. The motions were granted by the trial judge, and this appeal followed.

### I. *Jurisdiction Issue*

Before proceeding to the merits of appellant's case we must address several jurisdictional defects raised by respondent. The trial judge granted the motions for summary judgment on September 29, 1980. The order, however, was not final and appealable, because there were other issues in the case pending before the court.[1] By stipulation of the parties the trial court entered an order amending the summary judgment on October 14, 1980. In that order the trial court rendered the summary judgment granted on September 29, an appealable order and judgment pursuant to Rule 81.06

(1980). Appellant filed his notice of appeal on October 30, 1980; sixteen days after the summary judgment was rendered appealable, and thirty-one days after the motion for summary judgment was initially granted.

 We note that a summary judgment which disposes of the claims by one or more parties is a nonappealable, interlocutory order if there are issues remaining to be determined after the summary judgment is granted. *New Age Federal Savings and Loan Association v. Miller*, 461 S.W.2d 876, 878 (Mo.1970). The summary judgment granted on September 29, 1980 was clearly nonappealable. Rule 81.05(a) (1980) provides that: "For the purpose of ascertaining the time within which an appeal may be taken, a judgment becomes final at the expiration of thirty days after the entry of such judgment, ...." Since the summary judgment granted on September 29, 1980 was not appealable, Rule 81.05(a) has no application in that the thirty day period specified in said Rule did not begin to run on that date. The issue then is when, if at all, did the thirty day time period begin to run. Respondent asserts that when the trial judge made the September 29 summary judgment an appealable order and judgment pursuant to Rule 81.06, the thirty day time period under Rule 81.05(a) was nullified or waived, and the ten day time period for filing the notice of appeal provided for in Rule 81.04(a) (1980) began to run. Since appellant failed to file his notice of appeal within ten days after October 14, 1980, as required by Rule 81.04(a), respondent contends this court is without jurisdiction. We disagree.

 "A final appealable judgment is one which disposes of all parties and all issues in the case." *Title Insurance Corp. of St. Louis v. United States*, 432 S.W.2d 787, 789 (Mo.App.1968). Rule 75.01 (1980) provides that the trial court retains control for thirty days over a judgment. The term

---

1. *Reliance Insurance Company*, a party defendant, claims that Richard Bell's death was not an accident under the terms of the accidental death insurance policy. Thus, whether *Reliance Insurance Company* is liable under the insurance policy still remains for judicial determination.

"judgment" as used in Rule 75.01 refers to a final appealable judgment which disposes of all parties and issues in a case. *State ex rel. Kansas City v. Public Service Commission,* 360 Mo. 339, 228 S.W.2d 738, 742 (1950). The purpose of Rule 75.01 is clear. It enables the trial court to rectify any errors in the judgment, and thus simplify or forestall any further litigation at the appellate level. *Schreier v. Schreier,* 625 S.W.2d 644, 648 (Mo.App.1981). Once a judgment is entered which is final as to the parties and issues, the thirty day time period under Rule 75.01 begins to run.

Rule 81.06 (1980) provides:

When a separate trial is had before the court without a jury of claims arising out of the same transactions, occurrences, or subject matter as the other claims stated or joined in the case the judgment entered shall not be deemed a final judgment for purposes of appeal ... unless specifically so designated by the court in the judgment entered.

A hearing on a motion for summary judgment is a separate trial before the court without a jury, thus the trial court may properly designate a judgment entered on the motion a "final judgment for purposes of appeal" under Rule 81.06. *Title Insurance Corp. of St. Louis v. United States, supra* at 790. "A final judgment for purposes of appeal" in a separate trial under Rule 81.06 is synonomous in nature, but not in scope, with a final judgment as to all the parties and all the issues. "The general rule is that to be final and appealable, a judgment must dispose of all parties and all issues in the case and leave nothing for future determination, unless the trial court ... has specifically designated the particular judgment as a final judgment for the purposes of appeal." *Johnson v. Great Heritage Life Insurance Co.,* 490 S.W.2d 686, 688 (Mo.App.1973). The rule quoted above demonstrates that a summary judgment designated a final judgment for purposes of appeal under Rule 81.06 is identical in nature, but not in scope, with a final judgment as to all the parties and all the issues. When a summary judgment is designated a final judgment by the trial court, it in essence becomes a final judgment as to the parties affected and issues raised by the motion for summary judgment. Since the two types of final judgments involved here are identical in nature, it follows that they both have the same effect upon Rule 75.01. Thus, when the trial court designated the summary judgment an appealable or final judgment, the thirty day period in Rule 75.01 began to run. In this case on October 14, 1980. Under Rule 81.05(a), the ten day time limit for filing the notice of appeal did not begin to run until thirty days after October 14. Appellant filed the notice of appeal on October 30, so his filing was actually premature. Premature filing, however, does not impair our jurisdiction. Rule 81.05(b).

▐▌ The second jurisdictional defect raised by respondent is appellant's failure to file his brief within sixty days after the date on which the record on appeal was filed. Rule 84.05(a) (1980). Under rules of appellate procedure: "If a party fails to comply with any of the rules of appellate procedure and *the court does not excuse the same,* the court shall, after notice, dismiss the appeal or take such other action as justice requires." Rule 84.08 (1980) (emphasis added). Whether we should dismiss an appeal for a procedural error is a question calling for the exercise of our discretion. *Borbein, Young & Co. v. Cirese,* 401 S.W.2d 940, 942 (Mo.App.1966). When the alleged error is failure to file a brief within the time limit specified in Rule 84.05(a), we will ordinarily dismiss the appeal unless good cause is shown or the interests of justice otherwise require. *Capoferri v. Upham,* 456 S.W.2d 793, 794 (Mo.App.1970).

▐▌ In the case at bar appellant filed his brief three days late. Accompanying the brief was an application for an order permitting the late filing of the brief. In his application appellant's attorney related circumstances indicating that he was exceptionally overburdened with work which made it impossible for him to submit his brief on time. Finally we note that this is an appeal of a summary judgment against

the appellant. Summary judgment is an "extreme and drastic remedy" which "borders on the denial of due process." *Miller v. United Security Ins. Co.,* 496 S.W.2d 871, 875 (Mo.App.1973). In light of these exceptional circumstances we deny respondent's request to dismiss this appeal for appellant's failure to comply with Rule 84.05(a), and proceed to the merits of the case.

## II. *The Summary Judgment*

■ Appellant alleges that the trial court erred in granting respondent's motion for a summary judgment. As noted earlier, summary judgment is an extreme remedy which a trial court should not invoke without exercising great caution. *Miller v. United Security Ins. Co., supra.* In reviewing a summary judgment we must consider the record in the light most favorable to the party against whom the judgment is rendered. *Elliott v. Harris,* 423 S.W.2d 831, 835 (Mo. banc 1968). "A summary judgment is a determination as a matter of law that there is no issue of fact to be tried...." *Id.* at 834. Thus, we must view the record in the light most favorable to appellant, and determine if there are any issues of fact to be tried. After careful review of the record and the applicable case law, we find that there are issues of fact to be tried. We hold that the trial court erred in granting respondent's motion for summary judgment.

Respondent relies principally on *Gnekow v. Metropolitan Life Ins. Co.,* 108 S.W.2d 621 (Mo.App.1937) to support her position that there is no issue of fact here. Respondent's reliance is misplaced. The fact situation in *Gnekow* is similar but distinguishable from the facts at bar. Before discussing those distinctions we must elucidate some preliminary points.

■ From the record we note that the decedent did not change the beneficiary of the insurance policies and retirement benefits in the manner prescribed by the policies and the retirement benefits office of the City of St. Louis. The provisions of an insurance policy governing the manner in which the beneficiary shall be changed are primarily for the benefit of the insurance company, and thus, may be waived by said insurance company. *Dunnavant v. Mountain States Life Ins. Co.,* 67 S.W.2d 785, 789 (Mo.App.1934); *Gnekow v. Metropolitan Life Ins. Co., supra* at 625. We find the same rule should apply to the retirement program. The insurance companies and the retirement program of the City of St. Louis may properly waive the provisions governing the manner for changing the designated beneficiary. In the case at bar General American Life Insurance Company did make such a waiver when it filed a counterclaim and crossclaim for interpleader, and deposited the insurance money with the trial court. *Genkow v. Metropolitan Life Ins. Co., supra.*

■ Reliance Insurance Company and the retirement system of the City of St. Louis have not filed interpleader claims because they contest the manner of Richard Bell's death. If these parties are found liable for the insurance policy proceeds and the retirement system death benefits respectively, they may or may not waive compliance with the change of beneficiary provisions in the insurance policy and retirement program. Refusal to waive these provisions by the insurer or the retirement system will not, however, resurrect respondent's right to the payments in question if she did in fact forfeit her interest. As noted earlier, provisions governing the manner in which the beneficiary shall be changed are primarily for the benefit of the insurer or retirement system, in that it protects them against multiple liability where two or more conflicting claimants appear. *Dunnavant v. Mountain States Life Ins. Co., supra.* Thus, the insurance company or retirement system may make payment to the designated beneficiary without fear of liability to a second claimant. A life insurance policy reserving to the insured the right to change the beneficiary does not, however, confer upon the beneficiary a vested right to the proceeds, but only a conditional interest or expectancy which can be terminated by the insured at any time. *Service Life Ins. Co. of Fort Worth v. Davis,* 466 S.W.2d 190, 195 (Mo.App.1971). Thus, the designated beneficiary, who re-

ceives the proceeds from the insurer, may still be liable to a second claimant for the proceeds received if the designated beneficiary was divested of his interest before it vested. In *Perry v. Perry,* 484 S.W.2d 257 (Mo.1972) an insurance company paid insurance proceeds to the designated beneficiary, decedent's mother. Decedent's mother was found liable to decedent's children for the proceeds of the policy on the basis of a contract between decedent and his wife, incident to divorce, in which decedent promised to make the insurance payable to his children. *Id.* at 258. Although the insurance company had not waived the change of beneficiary provisions of the policy, decedent's mother did not thereby acquire a vested right to the insurance proceeds because her expectancy was nullified by the vested rights created in the contract between decedent and his wife. *Id.* Whether Reliance Insurance Company and the retirement system will waive the provisions governing the change of beneficiary is irrelevant to the ultimate question of whether Ruth Garcia's expectancy in the policies and benefits at issue was revoked in the stipulation agreement.

█ The next question is whether a beneficiary's expectancy can be revoked in a stipulation agreement incident to a divorce. The first time *Gnekow* was before this court, we held that a wife-beneficiary's expectancy could be revoked in a property settlement. *Gnekow v. Metropolitan Life Ins. Co.,* 99 S.W.2d 126, 130 (Mo.App.1936). On appeal the Supreme Court reversed our holding that the hearsay testimony of friends and relatives of decedent was competent to prove what the insured thought the effect of the divorce decree was. *State ex rel Gneckow v. Hostetter,* 340 Mo. 1177, 105 S.W.2d 928, 929 (Mo. banc 1937). The Supreme Court did not, however, reverse our holding that the wife-beneficiary could forfeit her expectancy. The second time *Gnekow* came before this court we reaffirmed our holding that the wife-benefi-

ciary could forfeit her expectancy in a property settlement but ruled against the decedent's estate because of a lack of evidence. *Gnekow v. Metropolitan Life Ins. Co.,* 108 S.W.2d 621, 625 (Mo.App.1937). We hold that the proper rule is as follows:

. . . [W]here the forms of a separation agreement carried into a divorce decree plainly disclose an intent to remove the named beneficiary in a life insurance policy from all rights to the proceeds thereof, such agreement may operate to prevent the named beneficiary from claiming the proceeds upon the death of the insured . . . .

*Cannon v. Hamilton,* 174 Ohio St. 268, 189 N.E.2d 152, 154 (1963).[2]

As indicated by *Gnekow* the primary issue is proving the intent to revoke the expectancy of the beneficiary in the separation agreement. In *Gnekow* the policy of insurance was not mentioned in any manner in the divorce decree or the property settlement. *Gnekow v. Metropolitan Life Ins. Co.,* 108 S.W.2d 621, 625 (Mo.App.1937). The only evidence offered to prove that the wife-beneficiary's expectancy was revoked was incompetent hearsay. *Id.* The facts in the case at bar are dissimilar.

█ The decree in *Gnekow* provided that "appellant . . . relinquishes all inchoate rights of dower and claims of any of the property of defendant." *Id.* 99 S.W.2d 126, at 131. The paragraph of the stipulation agreement in which respondent released her rights and interest in decedent's real and personal property specifically mentions "policies." There is no doubt that this term means insurance policies. The issue is what interest or right respondent waived in the insurance policies. With respect to the retirement death benefits the issue is did respondent release her rights in the decedent's retirement benefits. Thus, unlike *Gnekow,* the stipulation agreement in this case clearly indicates an intent to release or revoke rights in any insurance policies and retirement benefits. The scope of that rev-

---

**2.** In her brief, respondent raises the fact that the stipulation agreement was not incorporated into the divorce decree. Whether that failure will relieve respondent of any obligation under the stipulation agreement is not before us for determination. We note, however, that based on the information available to us at this point in the case we doubt that the respondent can avoid her obligations under the agreement.

ocation is the issue. Appellant contends that the release of "each and every right" by respondent includes contingent beneficiary interests under the insurance policies and retirement program.[3] Respondent asserts she never waived those rights. We find that "each and every right" is suceptible of different constructions which cannot be resolved by the present record. There is a difference in the insured's "rights" and the beneficiary's "rights." Where a right to change the beneficiary is reserved in the policy, the beneficiary has no vested or indefeasible interest during the lifetime of the insured, but only a revocable expectancy contingent upon being the beneficiary at the time of the insured's death. A beneficiary has only an inchoate right to the proceeds of a policy, subject to being divested at any time during the lifetime of the insured, by transfer, assignment, or change of beneficiary, or in some cases by the death of the beneficiary before the insured.[4] The insured has the "right" to transfer, assign or change the beneficiary at anytime. In fact, the insured could, despite a stipulation relinquishing the beneficiary's right, continue to designate the released beneficiary as beneficiary. Upon remand and trial, it may be proven that the decedent intended in 1976 to redesignate Ruth Bell as beneficiary. In that event, the "rights" clause of the stipulation would be ineffective since the decedent reaffirmed his intention to designate Ruth Bell as his beneficiary.

On the question of competent evidence, we note that the appellant cannot introduce testimony relating decedent's prior statements with respect to his belief as to the meaning of the stipulation agreement. However, this does not mean that there is no evidence available. The primary concern in construing a separation agreement is to ascertain the intent of the parties. "In ascertaining this intention, resort may be had to the circumstances surrounding the formulation and execution of the contract, the relationship of the parties, the purpose to be served, and the course of negotiations, if any." *General American Life Ins. Co. v. Rogers,* 539 S.W.2d 693, 698 (Mo.App.1976). By granting the motion for summary judgment, the trial court improperly deprived appellant of the opportunity to present and support his position that the stipulation agreement revoked respondent's expectancy as beneficiary in the insurance policies and retirement benefits.[5] The decision of the trial court must be reversed on all four counts of appellant's petition.

Reversed and remanded.

SMITH, P. J., and SATZ, J., concur.

---

3. *See, Hollaway v. Selvidge,* 219 Kan. 345, 548 P.2d 835 (1976).

4. Couch on Insurance 2d, Section 27:58, pp. 561–564.

5. Decedent was unrepresented by counsel, and *apparently* relied upon respondent's attorney who drafted the stipulation agreement. As noted earlier there is some ambiguity as to the interests forfeited by respondent. Under these circumstances the construction of the contract adopted must be against the party who prepared it and in favor of the party who merely signed it. *John Deere Co. v. Hensley,* 527 S.W.2d 363, 365 (Mo. banc 1975). Any ambiguity may dissipate upon presentation of evidence by either party.