Stanley M. **ROSENBLUM**,
Trustee,

v.

Antoinette **GIBBONS**, respondent,
**and**
Patrick Gibbons, Lawrence Gibbons,
**and Elizabeth Gibbons Vasquez,**
**Appellants.**

No. 48170.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 31, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 13, 1985.

Application to Transfer Denied
April 2, 1985.

Francis L. Ruppert, Clayton, for appellants.

Merle L. Silverstein, Clayton, for Trustee.

Lawrence J. Lee, John. L. Sullivan, St. Louis for respondent.

GAERTNER, Judge.

At issue here is the validity of a comprehensive testamentary plan of Harold J. Gibbons. On March 20, 1978, Gibbons executed a will and a trust indenture. The will, after providing for the payment of debts and the distribution of tangible personal property, provided for the entire residual estate to be added to the corpus of the trust simultaneously created. The trust indenture recited, as a premise, that Gibbons, the grantor, had caused his interest in the retirement and family protection plan of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America to be made payable to Stanley M. Rosenblum, as trustee named therein. The creation of the trust was stated to be in consideration of this premise "and for One Dollar ($1.00) and other valuable considerations, receipt of which is hereby acknowledged." The indenture anticipated the receipt by the trustee of the proceeds of the retirement plan upon the death of the grantor and other assets, including the proceeds of insurance policies on the life of the grantor. The trust was revocable and provided for grantor's power to amend in whole or in part by written instrument. On June 19, 1981, a second trust indenture was executed. The language of this instrument, including the named trustee, the corpus and the powers of the trustee, is identical to the 1978 indenture. The only material change consists in the provisions for distribution of assets to the beneficiaries of the trust. The dispositive provisions of the 1978 instrument were more favorable to grantor's children, those of the 1981 instrument favored his wife. The 1981 instrument does not expressly revoke or refer in any way to the 1978 instrument. On the same date, Gibbons executed a "beneficiary designation and benefit payment statement" directing the trustees of the retirement plan to pay death benefits to the trustee named in the indenture of June 19, 1981 upon his death prior to his retirement.

Gibbons died on November 17, 1982. The trustee received $438,752.04 from the retirement plan and $15,000.00 from a life insurance policy. On June 9, 1983, the trustee filed this action for declaratory judgment. He alleged that a dispute existed between the wife and the children regarding which of the two trust indentures established the lawful trust in which to receive and to administer the funds from the retirement plan. Naming the wife and children as defendants, the trustee prayed for a judicial declaration of which of the two trusts indentures was valid. The wife, by counterclaim and crossclaim, sought a declaration that the 1981 trust indenture was a valid amendment of the 1978 trust. The children prayed for a declaration that both trusts were null and void.

On November 14, 1983, the cause was tried before the court without a jury. On. November 18, 1983, the trial court issued findings of fact and conclusions of law, holding the 1981 trust instrument to be a valid amendment of the 1978 trust. The children appeal contending the trust was invalid as an inter vivos trust because it

was not funded before the death of the grantor, that it was not a testamentary trust because not executed before witnesses as required by § 474.320, RSMo.1978, and alleging trial court error in the admission in evidence of the testimony of Stanley Rosenblum regarding the employment of Gibbons at the time of his death. We affirm.

■ Under *Murhpy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976), the judgment of the trial court in a bench-tried case is to be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* at 32. The judgment of the trial court must be affirmed if it is correct on any theory. *Washington University Medical Center v. Komen*, 637 S.W.2d 51, 53 (Mo.App.1982). Within these narrow parameters we undertake an analysis of the testimonial and documentary evidence.

### THE 1978 TRUST

The children dispute the finding of the trial court that the 1981 trust was an amendment of the 1978 trust and argue that both were invalid. This argument is predicated upon their contention that neither of the trusts was established with a then existing identifiable corpus actually delivered, assigned or conveyed to the trustee. The elements essential to the establishment of an inter vivos trust are set forth in *Webb v. St. Louis County National Bank*, 551 S.W.2d 869, 875 (Mo.App. 1977):

> It has long been held that "to establish a valid express trust inter vivos, there must be (1) a beneficiary, (2) a trustee, (3) a trust res so sufficiently described or capable of identification that title thereto can pass to the trustee, (4) actual delivery of the corpus, its character considered or a legal assignment of the same to the trustee actually conveying

> present title by the owner under the circumstances which unequivocally disclose an intent to hold it for the use of another."

Here, the children seize upon the fourth requirement and assert a two-fold argument in support of their contention that there was no actual delivery, assignment or conveyance to the trustee. They argue that because the corpus of the trust consisted solely of the retirement benefits which were not to be received until the death of Gibbons before his retirement, actual delivery was occasioned by his death and, therefore, the trust was testamentary rather than inter vivos. Secondly, they assert that the designation of the trustee as beneficiary was not a conveyance or assignment as it vested no title in the trustee, but created a mere expectancy. In support of this latter contention, they rely upon *Bell v. Garcia*, 639 S.W.2d 185, 191 (Mo.App.1982) wherein this court expressed the general rule that the beneficiary of a life insurance policy, subject to change by the insured, does not possess a vested right to the proceeds of the policy, but only a conditional interest or expectancy subject to termination. Their reliance on *Bell* is misplaced. The rule expressed therein was stated in support of the conclusion that a first beneficiary of a life insurance policy possessed insufficient interest to complain of noncompliance by the insured with policy requirements regarding the form and manner of effecting a change of beneficiary. Waiver of such noncompliance is a matter solely within the purview of the insurer; the original beneficiary, having only an expectancy subject to divestiture, has no standing to assert noncompliance with formalities. *Bell* is not authoritative regarding the question of whether or not a beneficiary designation is a sufficient delivery of an identifiable trust res to constitute the funding of the trust.

We are cited to no Missouri decision and independent research has not disclosed any Missouri case which has ruled upon this

precise question. In *Scott on Trusts*, 3rd edition, vol. 1, § 57.3 (1967), the issue of funding an insurance trust by means of beneficiary designation is discussed.

A question arises where the insured has reserved the power to change the beneficiary of the policy and other incidents of ownership, and perhaps in addition the power to change the beneficiaries of the trust. Is the trust invalid as a testamentary disposition? It is arguable that the trust does not arise until the death of the insured, that his death is a condition precedent to the creation of the trust, and that therefore the disposition is testamentary. The answer is, however, that the beneficiary of the policy as soon as he is named trustee holds his rights as beneficiary of the policy in trust. The mere fact that those rights can be terminated at any time by the insured, and that the rights of the beneficiaries of the trust are enjoyable only after the death of the insured, and that the trustee has no active duties until the death of the insured, does not prevent a trust from arising immediately. It is not a disposition subject to the condition precedent of the death of the insured, is not a mere expectancy, but is a trust which is subject to revocation or modification during the life of the insured. It is true that until the death of the insured it is a pretty thin trust. The difficulty in upholding the trust, however, is no greater than in upholding the rights of the beneficiary of an insurance policy where no trust is involved but where the insured reserves power to change the beneficiary. A policy of life insurance where the insured has reserved the right to change the beneficiary is in a sense testamentary in character, but the courts have never had any difficulty in permitting the beneficiary to recover the proceeds on the death of the insured if he had not in fact changed the beneficiary. The fact that the policy is payable to a beneficiary as trustee for others makes it no more testamentary than if it were payable to the beneficiary absolutely. Moreover, the fact that the insured may have reserved power not only to change the beneficiary of the policy but also to change the beneficiaries of the trust, or otherwise to modify the terms of the trust, would seem to make the disposition no more testamentary. The danger of fraud which lurks in ordinary unattested testamentary dispositions is not serious in these cases.

The courts have therefore had no difficulty in upholding insurance trusts even though they are not executed with the formalities necessary for a will.

That the principles enunciated in this quotation have long been recognized in Missouri is illustrated by *Webb v. St. Louis County National Bank, supra.* The facts in *Webb* differ only slightly from those in the instant case. A trust was created for the specific purpose of receiving assets from other trusts created by the grantor's parents in the event he should predecease them. The nominal sum paid by the grantor to the trustee was recited to be $100.00. In holding a valid inter vivos trust was established, this court noted the absence of any authority requiring a more substantial res than that received by the trustee.

Once the trust has been created the enjoyment of its benefits may be postponed. *Gardner v. Bernard,* 401 S.W.2d 415, 421[7] (Mo.1966). As pointed out in *Sims v. Brown,* 252 Mo. 58, 158 S.W. 624 (1913) it matters not whether the postponement of the enjoyment be measured by the life of the settlor, the life of a third person or by some other measure. It is also universally recognized that the settlor may reserve the right to revoke the trust without affecting its validity. The title and interest vests subject to divestiture only by revocation and if no revocation is made the title and interest become absolute. *Sims v. Brown,* l. c. 628. Neither the size of the res at the time the trust was created, nor the postponement of the enjoyment of the trust

by the cestui qui trust in this case, serve to invalidate the trust.

*Webb v. St. Louis County National Bank,* 551 S.W.2d at 875.

■ If the size of the res when the trust is declared is irrelevant to its validity, the difference between the $100.00 in *Webb* and the $1.00 here is likewise irrelevant. Courts have never hesitated to find the recital of a $1.00 consideration for a conveyance of real estate between strangers to be sufficient in and of itself. *Frey v. Onstott,* 357 Mo. 721, 210 S.W.2d 87, 93 (1948). We see no reason why a similar recital should be held insufficient to establish a trust which constitutes the cornerstone of a grantor's comprehensive plan of caring for the needs of his family after his death.[1]

■ Moreover, even if the children's contention of invalidity as an inter vivos trust were sustainable, the trust would then be validated as a testamentary trust by reason of incorporation by reference in Gibbons' will. Other than clothing, jewelry, automobiles and household furnishings, the entirety of Gibbons' estate is devised under the will to the trustee named in the trust indenture executed simultaneously with the will. The trustee is also the sole beneficiary of the proceeds of the pension plan and the $15,000.00 life insurance policy. If the trust be declared invalid, his residuary estate, the pension plan proceeds and the insurance money would pass to his survivors under the laws of descent and distribution as an intestate estate. *Traders National Bank of Kansas City v. Levine,* 528 S.W.2d 497 (Mo.App.1975). In addition to the presumption against partial intestacy where a will has been executed, "which is particularly strong where the subject of the gift is the residuary estate," *Id.* at

499, Gibbons, in his will, expressly provided against such a possible contingency. The will provides "it is not my intention to incorporate said indenture of trust hereunder as a probate trust unless it is necessary to do so to prevent my property from being disposed of as intestate property."

This concept of conditional incorporation by reference was recently examined by this court in *Lorch v. Mercantile Trust Company National Association,* 651 S.W.2d 540 (Mo.App.1983). In *Lorch* the residuary clause of a will provided for the "pouring over" of assets into a revocable inter vivos trust, if the trust were then in existence. If not, the trust agreement was to be incorporated by reference into the will. "When a will makes a bequest to an inter vivos trust the terms of which are not set forth in the will, the bequest to the trust is valid only if the trust is incorporated by reference into the will or is a fact of independent significance, unless there is a statute to the contrary." *Id.* at 543. We held the conditional incorporation by reference inapplicable because the trust, funded only by $1,000.00 and the residuary estate, was valid as a fact of independent significance. While we reach the same conclusion here, were it otherwise the trust would nevertheless be valid as a testamentary trust expressly incorporated by reference into the will. *See also St. Louis Union Trust Company v. Blue,* 353 S.W.2d 770, 777 (Mo.1962).

## THE 1981 TRUST

Having established the validity of the 1978 inter vivos trust, we turn to the question of the effect of the 1981 trust indenture. The parties have adopted three divergent positions. The children contend both trusts are invalid. The trustee posits the existence of two trusts, one to receive

---

1. The principles enunciated in *Webb* and the cases cited therein have now been incorporated into the statutory law of Missouri. Section 456.-030, RSMo.1983, is Missouri's first statutory recognition of the growing use of life insurance trusts. It provides, in pertinent part, "it is not

necessary to the validity of such trust agreement or declaration of trust that it be funded or have a corpus other than the right, which need not be irrevocable, of the trustee or trustees named therein to receive such [life insurance policy] proceeds as beneficiary."

and administer the residuary estate under the provisions of the will naming the trustee of the 1978 trust as devisee, the other to receive and administer the proceeds of the pension plan and the life insurance policy. The wife contends the 1981 trust indenture was merely an amendment of the 1978 trust. The trial court adopted the wife's contention. We agree.

■■■ Except for differences in the dispositive provisions, the two instruments are virtually identical. The trustee and his powers are the same, the provisions for administration and management are the same, and, most importantly, the corpus is the same. Tacit revocation of a prior will by the execution of a later will, even though not expressed therein, is based upon the patent impossibility of administering two estates each composed of the same assets. A similar rule applicable to trusts is set forth in 89 C.J.S. *Trusts* § 97, p. 891 (1955):

> Modification or alteration, under a reservation of power, may take the form of a supplemental trust indenture, complete in itself and intended as a substitute for the original, so that the only rights arising are those created under the supplemental indenture.

The 1978 trust indenture provided for amendment by the grantor simply by a written instrument delivered to the trustee and executed by the grantor and the trustee. It is undisputed that the 1981 trust indenture satisfied these formalities. We are referred to and find no Missouri decision on this issue. Other states have followed the rule set forth above. *In re Huested's Estate*, 403 Pa. 185, 169 A.2d 57 (1961); *Lambdin v. Dantzebecker*, 169 Md. 240, 181 A. 353 (1935); *State v. Banker's Trust Company*, 105 Vt. 220, 164 A. 377 (1933). The utter impossibility of applying different dispositive provisions to a single corpus compels the conclusion that the grantor's intent was the later instrument replace and supplant the former, even though revocation of the former is not specifically expressed.

■ Accordingly, we find the 1981 trust indenture, which complied with the form and manner of exercising the right to amend the 1978 trust indenture, constituted an amendment to the prior indenture and was the only valid and subsisting trust at the time of grantor's death.

### ALLEGED EVIDENTIARY ERROR

■ The children's final point on appeal alleges trial court error in admitting the testimony of trustee Rosenblum that Gibbons had not retired at the time of his death. Their objection to this testimony was that it constituted hearsay and that Rosenblum was disqualified as a witness by reason of the Deadman's Statute, § 491.010, RSMo.1978. We need not decide the question regarding the propriety of these objections because the evidence was irrelevant to the issues, as framed by the pleadings, which related solely to the validity or invalidity of the two trust indentures. The matter of Gibbons' retirement prior to his death arises only from the language of the beneficiary designation filed with the trustees of the retirement plan. Nothing before us reveals the import of what appears to be a condition imposed upon the payment of benefits under the plan. Nevertheless, the provision is obviously a matter which concerns only the trustees of the retirement plan and the designated beneficiary. The trustees made payment of the death benefits to the designated beneficiary, thereby waiving any possible non-compliance with the condition. Such non-compliance, if any, could not affect the validity or invalidity of the trust indentures.

■■■ Provisions of insurance policies and retirement systems relating to the form and manner of designating or changing beneficiaries are made for the benefit of the insuror or the retirement system, so that they may be protected from multiple liability. *Bell v. Garcia*, 639 S.W.2d at 190. The insuror or the retirement system

is free to waive noncompliance with such provisions. However, even if we disregard the waiver in this case and assume the designation of the trustee as beneficiary fails, the benefits of the retirement plan could only pass to Gibbons' estate and, by reason of his will, pour over into the trust. The ultimate result would be the same. Accordingly, if any error was committed in receiving the testimony, it was harmless.

The judgment is affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.