The ESTATE OF Mildred E. ROSE,
James E. Lockwood, Personal
Representative, Plaintiff,

v.

Jeannette M. LOUCKS, a Minor, Erin
M. Tucker, a Minor,
Defendants–Appellants,

Gary Miles Loucks, Suzanne White Tucker, T. Marc White, Boatmen's First National Bank of Kansas City, Matthew Loucks, a Minor, Mildred M. Rose, Robert Lee Gregory, Defendants–Respondents.

No. WD 40872.

Missouri Court of Appeals,
Western District.

June 27, 1989.

Gary K. Patton, Liberty, for defendants-appellants, Jeannette M. Loucks and Erin M. Tucker.

Richard D. Woods, Todd Ruskamp, Kansas City, for defendant-respondent Gary Miles Loucks.

George R. Haydon, James F. Duncan, Kansas City, for defendants-respondents Suzanne White Tucker and T. Marc White.

Steven M. Petry, Smithville, for defendant-respondent Matthew Loucks, a Minor.

Before MANFORD, P.J., and TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

This is an appeal from a summary judgment granted by the Probate Division of Clay County on a suit for declaratory judgment involving the construction of a will. The petition in this action was filed by James E. Lockwood, the acting Personal Representative of the estate of Mildred E. Rose (Mrs. Rose). He sought a declaratory judgment to determine whether the residuary estate of Mrs. Rose should pass: 1) under a 1986 trust agreement; 2) under a 1987 trust agreement; or 3) by intestacy. The court chose the last option. The Guardian Ad Litem for two of the parties who would have received money under the 1987 trust agreement Jeannette M. Loucks and Erin M. Tucker, appeal from that decision. The respondents are the lineal heirs of Mrs. Rose who were awarded the residuary estate under the conclusion of the trial court was of intestacy.

On April 3, 1986, Mrs. Rose executed her Last Will and Testament. She bequeathed all of her tangible personal property owned at the time of her death to her husband, O. Allen Rose, provided that he survived her. He did not. Therefore, all of her tangible personal property was left in equal shares to her nephews and niece: Gary Miles Loucks, Suzanne White Tucker and T. Mark White.

Under Article IV of the will, Mrs. Rose bequeathed the residue of her estate to her husband. That Article, however, provided that "if he [O. Allen Rose] should not survive me [which he did not] then I give and bequeath the same to the Trustees under that certain declaration of trust dated April 3, 1986 wherein I, MILDRED E. ROSE AND O. ALLEN ROSE are Grantors and O. Allen Rose and Boatmen's First National Bank of Kansas City, N.A. are Trustees, to be held administered and distributed as provided therein."

The declaration of trust to which the will refers was executed on the same day as the will. The trust was funded contemporaneously with the execution of the Trust agreement ("1986 Trust agreement"). That agreement provided that on the death of last Grantors, the Trustees were directed to set aside the sum of $100,000 to be held for the benefit of Mildred Maureen Rose (Maureen). There were certain provisions concerning the distribution of the money to Maureen, but they are not here relevant. What is relevant, is that upon the death of Maureen the remainder of the trust principal and accumulated income was to be distributed in the following manner:

1) $5,000 to Robert Lee Gregory, but if he does not survive Grantors, then this trust share shall not be established;

2) The residue of the 1986 trust to be divided as follows:

a) 40% to Gary Miles Loucks;

b) 40% to Suzanne White Tucker;

c) 20% to T. Marc White.

On February 18, 1987, Mrs. Rose executed a Revocation to the 1986 trust agreement, whereby she "revoked in its entirety said trust agreement." On that same date, she executed a new trust agreement ("1987 Trust Agreement"). That agreement was essentially the same as the 1986 trust agreement except that: 1) it clearly stated that the trust was revocable and amendable at any time by Grantor; 2) Lockwood would become co-trustee upon the death or incapacity of Mrs. Rose; 3) all of Mrs. Rose's burial expenses, last illness expenses and all debts were to be paid; 4) after Maureen received 100,000, Gary Miles Loucks was to receive $100,000 (instead of 40% of what remained as per the 1986 trust), Suzanne White Tucker was to receive $100,000 (instead of 40% of what remained), and T. Mark White was to receive $25,000 (instead of 20% of what remained); and 5) the residue of the estate, including

any sums not distributed in other parts of the trust, was to be held in trust in equal shares for Jeanette M. Loucks and Erin M. Tucker, the appellants.

Lockwood, the attorney for Mrs. Rose, explained by way of affidavit that during the middle of January, 1987, Mrs. Rose indicated to him that "she wanted to make certain changes in a living trust established by she and her late husband, O. Allen Rose. These changes were incorporated in an amendment to the trust dated April 3, 1986. A codicil to that will was also prepared and sent to Mrs. Rose incorporating the amendment in her will. The trustee, Boatman's First National Bank of Kansas City, by its trust officer, James Cole, advised affiant that he was of the opinion that the trust could not be amended by Mrs. Rose but that it could be revoked and a new trust created with the desired changes."

Apparently, Cole was concerned with a clause in the 1986 Trust Agreement which read: "This Agreement shall be revocable and amendable at any time by Grantors upon making a written declaration to that effect. No consent or notification of any beneficiary shall be required. The *revocation* of this Agreement may be made by both Grantors during their lives and by the survivor upon the death of either." (Emphasis added). Because one of the Grantors was dead (O. Allen Rose), the belief that the trust could not be amended but had to be revoked, resulted in Mrs. Rose revoking the 1986 Trust agreement and the creation of the 1987 Trust agreement. The codicil to her 1986 will (pouring over the residue of her estate in the 1987 trust) was never executed, as she soon died. The net result, leading to this suit to construe, was a 1987 trust but with a will that referred to a 1986 trust which had been revoked by the 1987 agreement.

The trial court ordered the residuary estate of Mrs. Rose pass by intestacy. In so determining, the court concluded that there was neither a patent nor a latent ambiguity in the language of the will, which was not contested, which could permit the court to consider evidence regarding the intent of the testator.

"When reviewing a ruling on a motion for summary judgment an appellate court must scrutinize the record in the light most favorable to the party against whom the motion was filed, according to that party all reasonable inferences which may be drawn from the evidence ... The burden is on the party moving for summary judgment to demonstrate that there is no genuine issue of fact ... A genuine issue of fact exists when there is the slightest doubt about a fact." *Gast v. Ebert*, 739 S.W.2d 545, 546 (Mo. banc 1987) (citations omitted); Rule 74.04. *See also Hayes v. Hatfield*, 758 S.W.2d 470, 472 (Mo.App.1988).

The appellants first claim that summary judgment was not appropriate in this case because there were genuine issues of material fact remaining as to whether Mrs. Rose revoked the 1986 trust. They believe when Mrs. Rose signed the document titled "Revocation of Trust Agreement" she only revoked the Trust Agreement and not the Trust itself. They see this as an "important distinction." Their argument follows, that the Trust referred to in the will remained intact and the only thing that changed was the agreement on how the assets were to be disbursed.

The appellants cite the case of *Rosenblum v. Gibbons*, 685 S.W.2d 924 (Mo.App. 1984), in support of their contention that Missouri courts distinguish between the revocation of a trust and the revocation of a trust agreement. In that case Gibbons executed a will and a trust indenture. The will, after providing for the payment of debts and the distribution of tangible personal property, provided for the entire residual estate to be added to the corpus of a trust simultaneously created. The trust (1979 trust) was revocable and amendable by written instrument. In 1981, a second trust indenture was executed (1981 trust). The 1981 trust was virtually identical to the 1979 trust except for the provisions concerning the distribution of assets to the beneficiaries of the trust. The question arose as to how the 1981 trust indenture affected the valid 1978 inter vivos trust.

The court noted that the 1978 trust indenture provided for amendment by the

grantor simply by a written instrument delivered to the trustee and executed by the grantor. Thus, the court concluded that "the 1981 trust indenture, which complied with the form and manner of exercising the right to amend the 1978 trust indenture, constituted an amendment to the prior indenture and was the only valid and subsisting trust at the time of the grantor's death."

■ In *Rosenblum* there was no revocation document as in the present case. In any event, the facts in *Rosenblum* took place before Missouri enacted § 456.232. In 1983 the legislature enacted § 456.232, RSMo 1986 which controls this point and reads:

A devise or other transfer, the validity of which is determinable by the law of this state, may be made by a will or other instrument of transfer, including a designation of beneficiary under a life insurance policy, to the trustee or trustees of a trust established or to be established by the testator or transferor or by the testator or transferor and some other person or persons or by some other person or persons, including a funded or unfunded life insurance trust, although the settlor thereof has reserved any or all rights of ownership of the insurance contracts, **if the trust is identified in the testator's will or the instrument of transfer and its terms are set forth in a written instrument.** The devise or transfer shall not be invalid because the trust is amendable or revocable, or both, or because the trust was amended after the execution of the will, the delivery of the instrument of transfer, or the death of the testator. Unless the testator's will or the instrument of transfer provides otherwise, the property is so devised:

(1) Shall not be deemed to be held under a testamentary trust of the testator or transferor but shall become a part of the trust to which it is given; and

(2) Shall be administered and disposed of in accordance with the provisions of the instrument or will setting forth the terms of the trust, including any amendments thereto made before the death of the testator or transferor, regardless of whether made before or after the execution of the testator's will or the delivery of the instrument of transfer, and, if the testator's will or the instrument of transfer so provides, including any amendments to the trust made after the death of the testator or transferor.

**A revocation or termination of the trust before the death of the testator shall cause the devise to the trustees of that trust to lapse.**

§ 456.232, RSMo 1986 (emphasis added).

This point is ruled against the appellants. A similar decision must be given for the alternate contention of the 1987 agreement amounts to only an "amendment" of the 1986 agreement. Despite what is an inadvertent single use of the words "amendment" and "Successor trustee," the 1987 document, in all other respects and in plain language revokes the 1986 agreement and trust. In this case, the 1986 Trust was explicitly revoked, and according to § 456.232 the devise lapsed. No material facts remained and on the facts under the statute the devise lapsed. The only result was that intestacy as found by the trial court.

■ The appellants other point on appeal is that the trial court should have considered evidence regarding the intent of the testator. It is the duty of this court in construing a will to determine the intent of the testator. *Estate of Buckley*, 677 S.W.2d 946 (Mo.App.1984). In Missouri, there is a strong presumption against partial intestacy, especially where the subject of the gift is the residuary estate. *St. Louis Union Trust Company v. Bethesda General Hospital*, 446 S.W.2d 823, 827 (Mo.1969). "Although courts are disposed to adopt any reasonable construction of a will to avoid intestacy, the courts may not, under the guise of construction, ignore the pellucid import of testatrix's words." *In re Estate of Rau*, 708 S.W.2d. 746, 748 (Mo.App.1986). The court must look first to the four corners of the will, and give effect to all provisions, if possible. *Matter of Morrissey*, 684 S.W.2d 876, 878 (Mo.App.

1984). *Only* when language of a will is ambiguous can a court consider extrinsic evidence to ascertain the testator's interest. *Id.* "[A]mbiguity' means 'duplicity, indistinctness or uncertainty of meaning of an expression used in a written instrument'" *Tenney v. American Life and Accident Ins. Co.*, 338 S.W.2d 370, 371 (Mo. App.1960) (quoting *Peters v. Briska*, 191 S.W.2d 993, 996 (Mo.App.1946)); *Schupbach v. Schupbach*, 760 S.W.2d 918, 923 (Mo.App.1988).

> An ambiguity in a will or trust may be either patent or latent. A patent ambiguity occurs when the duplicity, indistinctness, or uncertainty of meaning appears on the face of the instrument being considered ... A latent ambiguity occurs when the instrument being considered is unambiguous on its face but becomes open to more than one interpretation when applied to the factual situation in issue....

Mrs. Rose's will is clear on its face. Therefore, extrinsic evidence could only have been submitted if, when reading the will, a patent ambiguity is found. Just because a will refers to a trust agreement which has since been revoked does not create a patent ambiguity. Missouri recognizes two types of latent ambiguities in will and trust cases. One type is when the document describes a document or thing, and two or more persons or things fit exactly the description or condition in the will. *Matter of Morrissey, supra,* 684 S.W.2d at 877. The other type is those "which describe a condition or thing which no person or thing fits but two or more persons or things fit in part and imperfectly." *Id.* at 878–79.

The appellants cite to the 1987 trust in order to establish a patent ambiguity. They compare the will with the 1987 trust and the 1986 trust with 1987 trust. A court may not, however, look to the 1987 document until it is determined that an ambiguity exists. Unfortunately, since Mrs. Rose did not execute a codicil to her 1986 will this court cannot look to nor consider the 1987 document. Therefore, the appellant's second point is denied.

The judgment is affirmed.