In re the **MARRIAGE OF Melody Renee SHORT and Arthur Bernard Short.**

**Melody Renee SHORT, Appellant,**

v.

**Arthur Bernard SHORT, Respondent.**

**No. 18078.**

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 3, 1993.

Robert R. Parrish, Joplin, for appellant.

Bruce A. Copeland, Joplin, for respondent.

CROW, Presiding Judge.

Melody Renee Short appeals from a decree dissolving her marriage to Arthur Bernard Short. In the record, the parties refer to each other as Renee and Barnie, respectively. For convenience and clarity, so shall we.

Renee, age 32 at time of trial, and Barnie (a dentist), age 44 at time of trial, were married September 7, 1984. The union produced two children: Brady Allan Short, born June 4, 1985, and Grant Noble Short, born December 14, 1988. The parties separated in May, 1990.

Renee's brief presents two points relied on; the first complains the child support awarded her is too low; the second avers the trial court erred by limiting the maintenance awarded her to one year.

Before confronting those issues, we must determine whether Renee's notice of appeal was timely. Barnie maintains it was not. Resolution of this question begins with a chronology of the litigation.

August 23, 1990. Parties appear in trial court with their respective lawyers. Docket sheet shows:

> Trial by Court. The Court finds that both parties have been residents of this State for more than 90 days and that 30 days has [sic] elapsed since the filing of the petition. The Court finds that there remains no reasonable likelihood that the marriage can be preserved and that the marriage is irretrievably broken. That the wife is not now pregnant. Marriage ordered dissolved.

No other issues were adjudicated.

September 27, 1990. Parties reappear in trial court with their respective lawyers. Trial ensues, generating a 229–page transcript.

April 4, 1991. Trial court signs and files a two-page document stating, in pertinent part:

> It is therefore ordered, adjudged and decreed ... that the parties hereto be and they are hereby granted a dissolution of their marriage and restored to all rights and privileges of single and unmarried persons.
>
> All issues except those stated above are taken under advisement.

As reported *supra*, the trial court had ostensibly dissolved the marriage seven months earlier, on August 23, 1990.

December 11, 1991. Trial court signs and files a 20–page "Decree and Findings of Fact and Conclusions of Law." It again orders the marriage dissolved and, among other subjects, addresses child custody and visitation, child support, division of marital property, allocation of debts, attorney fees, and maintenance.

December 26, 1991. Barnie files a "Motion to Amend Decree or, in the Alternative, for a New Trial." The motion alleges, *inter alia:* "The Decree fails to set aside to either party their respective separate properties." The motion lists 52 items (some being multiple) allegedly owned by Barnie as his separate property but omitted from the decree. The motion also lists 24 items (some being multiple) allegedly owned by Renee as her separate property but omitted from the decree.

March 12, 1992. Trial court signs and files a 23–page "Amended Decree and Findings of Fact and Conclusions of Law." It covers the same subjects as the decree of December 11, 1991. Additionally, it sets apart to Renee, as her separate property, 26 items (some being multiple) catalogued

in Barnie's motion of December 26, 1991, and sets apart to Barnie, as his separate property, 44 items (some being multiple) catalogued in his motion of December 26, 1991. The amended decree also awards Renee, as marital property, two of the items identified in Barnie's motion of December 26, 1991. Besides these additions, the amended decree varies in some respects from the December 11, 1991, decree. As these differences are immaterial to the issue of timeliness of Renee's notice of appeal, we need not detail them.

March 19, 1992. Renee files a "Motion to Amend the Amended Decree, or in the Alternative, for a New Trial or a Motion to Modify Said Decree." The motion alleges the evidence showed Barnie maintains health insurance on the parties' children and is willing to continue doing so, and is also willing to provide dental care for them. The motion prays the trial court to order Barnie "to pay all medical expenses of the ... children, plus maintain a medical insurance policy and to provide said children with dental care, all at [his] expense."

March 27, 1992. Trial court signs and files a one-page "Amended Decree" which reads, in pertinent part:

> ... [Barnie] is ordered to maintain medical insurance, as it now exists, on the ... children born to the marriage at the expense of [Barnie] and to provide said children with dental care, all at [Barnie's] expense. [Renee] shall pay all deductibles.

The decree addresses nothing else.

March 31, 1992. Trial court signs and files a 23–page "Second Amended Decree and Findings of Fact and Conclusions of Law." It recites: "... the Court enters this Second Amended Decree, *nunc pro tunc,* to correct a clerical mistake in the Amended Decree." The "clerical mistake" is unidentified in the second amended decree. The decree covers the same subjects as the decree of March 12, 1992, but says nothing about the medical insurance and dental care addressed in the decree of March 27, 1992.

April 6, 1992. Renee files notice of appeal.

Barnie's theory that Renee's notice of appeal was untimely is based on this reasoning:

A. Upon entry of the March 12, 1992, decree, "the trial court's judgment became final and appealable and therefore the trial court lost jurisdiction to control the case."

B. Rule 81.04(a)[1] reads, in pertinent part: "No ... appeal shall be effective unless the notice of appeal shall be filed not later than ten days after the judgment ... appealed from becomes final."

C. Renee filed her notice of appeal 25 days after March 12, 1992.

Implicit in Barnie's logic is the premise that the trial court lacked jurisdiction to enter the decrees of March 27, 1992, and March 31, 1992. Obviously, if either of those decrees be valid, Renee's notice of appeal was timely.

■ Barnie correctly points out that the timely filing of a notice of appeal is a jurisdictional requirement. *Goldberg v. Mos,* 631 S.W.2d 342, 345[2] (Mo.1982). If a notice of appeal is untimely, the appellate court is without jurisdiction and must dismiss the appeal. *Boyer v. Shay,* 675 S.W.2d 147, 148[3] (Mo.App.1984); *Dombroski v. Cox,* 431 S.W.2d 680, 681[1] (Mo. App.1968).

■ We begin our analysis of the timeliness issue by recognizing that a notice of appeal must be filed not later than ten days after the judgment appealed from becomes final. Rule 81.04(a); *Kohl v. Safeco Insurance Co.,* 755 S.W.2d 314, 315[2] (Mo.App.1988); *LeGrand v. LeGrand,* 663 S.W.2d 339, 340[2] (Mo.App. 1983). As a general rule, for purpose of appeal a judgment must be a final judgment and must ordinarily dispose of all parties and all issues in the case. *Stith v. St. Louis Public Service Co.,* 363 Mo. 442, 251 S.W.2d 693, 695[2] (1952); *Wilson v. Mercantile Bank of Springfield,* 791 S.W.2d 497, 500[5] (Mo.App.1990). That is, to be a final judgment, subject to appeal, a

---

1. Rule references are to Missouri Rules of Civil Procedure (1992).

judgment must fully determine the rights of the parties to the action. *Lacher v. Lacher,* 785 S.W.2d 78, 80 (Mo. banc 1990).

█ Here, one of the issues at trial was whether Barnie should be ordered to maintain medical insurance for the children at his expense and provide their dental care. Renee's testimony:

Q. You're asking the Court ... to have Dr. Short carry the two children on the medical insurance; is that correct?

A. That is correct.

Barnie also testified on the issue:

Q. What would you pose as far as medical insurance for the children?

A. To cover the children.

Q. You would provide that insurance?

A. Medical insurance and have her pay the deductibles on it.

Q. And would you provide the dental work free of charge?

A. Yes, I do.

This issue was not addressed by the trial court until March 27, 1992. On that date, as we have seen, the trial court entered a one-page "Amended Decree" adjudicating the issue. The relevant portion of the decree is quoted *supra.*

While Rule 74.01(b) authorizes a trial court to enter judgment on fewer than all of the claims upon an express determination that there is no just reason for delay, none of the decrees here contain any such determination. Consequently, we hold no final judgment for purpose of appeal was entered in the instant case until March 27, 1992, when the trial court resolved the medical insurance and dental care questions, thereby determining the final issue between the parties. *Kahn v. Royal Banks of Missouri,* 790 S.W.2d 503, 511[16] (Mo.App.1990); *Ahern v. Turner,* 732 S.W.2d 261, 262[1] (Mo.App.1987).

█ Although there was no single document adjudicating all issues, the decrees of March 12, 1992, and March 27, 1992, collectively, did so. Separate entries can result in a "judgment" from which an appeal may be taken. *Kilmer v. Browning,* 806 S.W.2d 75, 78[1] n. 1 (Mo.App.1991). *See:*

*Wood v. Wood,* 716 S.W.2d 491, 495[10] (Mo.App.1986).

Renee's notice of appeal was filed on the tenth day following entry of the amended decree of March 27, 1992. It was therefore timely. Barnie's contention that it was not is denied.

However, there is another appealability problem. On March 31, 1992, four days after the trial court completed its adjudication of all the issues, the trial court signed and filed the second amended decree, apparently attempting to consolidate all the rulings in one correct and complete document. Unfortunately, that decree ignored the medical insurance and dental care issues. Nothing in that decree indicates the trial court intended to incorporate in it the decree of March 27, 1992.

Consequently, if the trial court had authority on March 31, 1992, to enter the second amended decree, we are once again left without a decree adjudicating all the issues. This presents the unavoidable question of whether the trial court exhausted its jurisdiction upon entering the decree of March 27, 1992.

Rule 75.01 reads, in pertinent part:

The trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time....

█ The term "judgment" in the above rule refers to a final appealable judgment which disposes of all parties and issues in a case. *State ex rel. Kansas City v. Public Service Commission,* 360 Mo. 339, 228 S.W.2d 738, 742 (1950); *Bell v. Garcia,* 639 S.W.2d 185, 188–89[3] (Mo.App.1982). The purpose of Rule 75.01 is to enable the trial court to rectify any errors in the judgment, and thus simplify or forestall any further litigation at the appellate level. *Bell,* 639 S.W.2d at 189. Once a judgment is entered which is final as to the parties and issues, the thirty-day time period under Rule 75.01 begins to run. *Id.*

■ We therefore hold the trial court, upon compliance with the notice and good cause requirements of Rule 75.01, had authority to correct, amend, or modify its decree on March 31, 1992. *Dixon v. Bi-State Development Agency,* 636 S.W.2d 696, 698[1] (Mo.App.1982).

This requires us to determine whether the record demonstrates the trial court complied with those requirements. Absent compliance, the purported decree of March 31, 1992, is a nullity insofar as it divests Renee of relief earlier awarded her. *Caldwell Paint Mfg. Co. v. LeBeau,* 591 S.W.2d 1, 6[6] and [7] (Mo.App.1979); *Summers v. Clayton,* 500 S.W.2d 28, 30 (Mo.App.1973).

The record is bare of any indication that the trial court gave the parties an opportunity to be heard in regard to entry of the March 31, 1992, decree. While that decree states its purpose is to correct, nunc pro tunc, a clerical mistake in an earlier decree—a nunc pro tunc correction is an exception to the notice requirement of Rule 75.01, *Roedel v. Roedel,* 788 S.W.2d 788, 790[1] (Mo.App.1990)—the March 31 decree did more. By failing to include the March 27, 1992, adjudication of the medical insurance and dental care issues, it deprived Renee of those awards.[2] Because that was done in violation of Rule 75.01, we hold the March 31, 1992, decree void in that respect, and in any other (if any there be) wherein such decree purports to change any right or liability created by the decrees of March 12, 1992, and March 27, 1992.

It follows that the decree of dissolution of marriage in this case consists, collectively, of: (1) the March 12, 1992, decree, (2) the March 27, 1992, decree, and (3) any *valid* nunc pro tunc correction made by the March 31, 1992, decree. In the latter regard, we note there are requirements for, and limitations on, nunc pro tunc corrections. *Roedel,* 788 S.W.2d at 790[2–3]. In

this appeal it is unnecessary to determine whether the nunc pro tunc correction attempted by the March 31, 1992, decree (whatever it was) is valid, and we express no opinion on the subject. We wistfully add that all the analysis, citations and holdings in this opinion so far would have been unneeded had one complete and correct decree been entered.[3]

Having made our way to this juncture, we now address Renee's first assignment of error, which assails the child support award.

The trial court placed both children in the "primary" physical custody of Renee and ordered Barnie to pay her $750 per month child support. The decree states:

> This amount of child support is not in conformity with Form No. 14, however, the Court finds that due to the amount of indebtedness assumed by [Barnie] and the division of marital property, Court finds that it is reasonable to deviate from the Form. In addition, no income was attributed to [Renee] on [Form No. 14], however, there was evidence [she] is capable of gainful employment and Court has attributed at least minimum wage to [her]. ([Renee] had previously been employed as a dental assistant). The Court considered the provisions of RSMo. 452.-340 in setting child support including:
>
> 1. The financial needs and resources of the children.
> 2. The financial needs and resources of both parents.
> 3. The standard of living the children would have enjoyed had the marriage not been divided [sic].
> 4. The physical and emotional condition of the children and their educational needs.
>
> [Barnie] has sustained large business losses in prior years. A substantial por-

---

**2.** Arguably, the March 27, 1992, decree is too vague to be enforceable. *See: Holt v. Holt,* 780 S.W.2d 156, 159[4] (Mo.App.1989). That question is not raised by either party, hence we decline to decide it.

**3.** An attentive reader will have noted 18 months passed from date of trial to entry of the March 31, 1992, decree. We are mindful many trial

courts are engulfed with litigation, and numerous subjects must be covered in dissolution decrees. However, it is difficult to envision circumstances requiring a year and a half to complete a decree in a dissolution case. Such delays do little to enhance public confidence (if any) in the judiciary.

tion of [Barnie's] income has been used to service this debt.

■ Appellate review of this court-tried case is governed by Rule 73.01(c), as construed by *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976). The decree of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.; Mehra v. Mehra*, 819 S.W.2d 351, 353[1] (Mo. banc 1991). We defer to the trial court's determinations of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the decree, disregarding all contrary evidence and inferences. *Id.* at 353[2].

At trial, Renee offered, and the trial court received, Petitioner's Exhibit 3, being Form 14, Missouri Rules of Court, p. 375 (West 1992). We henceforth refer to the exhibit as "Renee's Form 14."

On Renee's Form 14, she showed no monthly gross income for herself; she showed $4,500 monthly gross income for Barnie (line 1). Renee's Form 14 showed no adjustments (line 2); consequently, the "Combined Monthly Gross Income" (line 3) for determining the "presumed child support amount" was $4,500. Based on that income, the "Schedule of Basic Child Support Obligations" sets the monthly child support for two children at $899. In her testimony, Renee asked for that amount, "rounded off" to $900.

Renee's first point charges the trial court with error "in not awarding child support in the presumed amount." Renee presents five specific theories of error, designated "(a)" through "(e)." We address them seriatim.

■ Theory "(a)" is that the trial court erred in deviating from the presumed amount "without making the finding required by Rule 88.01 that it would be unjust or inappropriate to award the presumed amount."

Rule 88.01(e) reads, in pertinent part:

There is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the amount of child support to be awarded in any judicial ... proceeding for dissolution of marriage.... It is sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to ... Form No. 14 is correct if the court ... enters in the case a written finding ... that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate.

Renee correctly points out the trial court made no finding that the child support calculated per Form No. 14 "after consideration of all relevant factors, is unjust or inappropriate."

In its child support determination, quoted *supra*, the trial court found "it is reasonable to deviate from" the amount calculated per Form No. 14. The trial court set forth its reasons for that decision.

Renee cites *K.R.W. by A.C.S. v. D.B.W.*, 830 S.W.2d 38 (Mo.App.1992), and *Campbell v. Campbell*, 811 S.W.2d 504 (Mo.App. 1991). Those cases, decided by the Western District of this Court, clearly hold that where a trial court awards child support in an amount other than as calculated per Form No. 14, it is mandatory that the court find the Form No. 14 amount, after consideration of all relevant factors, is unjust or inappropriate.

This District has also addressed the subject. *In re Marriage of Waggoner*, 818 S.W.2d 735 (Mo.App.1991). There, in an appeal from an order in a modification proceeding, a father argued his child support obligation should have been reduced to the amount calculated per Form No. 14 because the trial court "failed to apply the guidelines or make the determination required by Rule 88.01." The trial court had originally made a finding parroting the language of Rule 88.01(e) when the trial court set child support in the dissolution decree at a sum exceeding the amount calculated per Form No. 14. The opinion said:

In denying [the father's] motion, the motion court expressly found "there have been neither substantial and continuing changes of circumstances nor such facts

and circumstances unknown to the Court at the time of the entry of said Decree so as to make the Decree unreasonable or unfair in regard to the ... support of the minor children." This is tantamount to a repetition of the finding in the dissolution decree that "[a]fter considering all relevant factors, the Court finds that the amount of presumed child support calculated pursuant to Missouri Civil Procedure Form 14 is unjust or inappropriate." 818 S.W.2d at 738[4].

Here, the trial court's findings demonstrate it understood the presumption that the child support calculated per Form No. 14 was the amount Renee should receive. The trial court found that because of Barnie's debts (discussed *infra*), the division of marital property (discussed *infra*), and the failure of Renee's Form 14 to attribute any income to her, it would be reasonable to deviate from the child support calculated per Form No. 14.

Do these findings satisfy Rule 88.01(e)'s requirement that the trial court find the amount calculated per Form No. 14, after consideration of all relevant factors, is unjust or inappropriate? Recognizing the question is close, we say yes.

Of course, it is preferable that a trial court deviating from the amount calculated per Form No. 14 make the finding in the precise language of Rule 88.01(e). Any departure from such language invites issues on appeal.

However, we hold the trial court's findings here, in their totality, manifest a considered decision by the trial court that the child support calculated per Form No. 14 would be inappropriate. The trial court's finding that it would be reasonable to deviate from the presumed amount is an unmistakable signal that the trial court concluded the presumed amount would be inappropriate. Renee's hypothesis of error "(a)" is denied.

In attack "(b)," Renee points out Barnie failed to present a Form No. 14 to the trial court. Consequently, says Renee, the trial court should have awarded the child support calculated per Renee's Form 14. In support of this argument, Renee cites *Wallace v. Ferreira*, 830 S.W.2d 571 (Mo.App.1992), and *Ibrahim v. Ibrahim*, 825 S.W.2d 391 (Mo.App.1992). Neither applies.

In *Ibrahim*, the noncustodial parent submitted no Form No. 14 to the trial court, then complained on appeal about the child support awarded the custodial parent. Here, the noncustodial parent (Barnie) does not appeal. The custodial parent (Renee) is complaining because the trial court awarded less child support than shown on Renee's Form 14.

In *Wallace*, the custodial parent (father) presented the trial court a Form No. 14 showing entitlement to a presumed amount of child support from the mother. The trial court found that under the circumstances presented, it was inappropriate to order the mother to pay any support. On appeal by the father, the Western District of this Court held the only evidence supporting a deviation from the presumed amount was the mother's two months of temporary custody of the child in the summer. This, said the Western District, did not constitute substantial evidence supporting total elimination of child support. The Western District ordered the mother to pay child support in the presumed amount, to abate during her two months of temporary custody.

Nothing in *Ibrahim* or *Wallace* suggests a trial court is compelled to award the child support calculated on one party's Form No. 14 merely because the adverse party presents no Form No. 14. Renee's contention "(b)" is without merit.

Component "(c)" of her first point asserts the trial court erred by deviating from the child support calculated on Renee's Form 14 in that the trial court failed to make "detailed findings justifying the deviation and the extent of the deviation." The gist of this complaint, as we divine it from the argument portion of Renee's brief, is that the trial court should have explained precisely how it arrived at $750 per month as the proper amount of child support. Renee argues, "[T]his Court should announce a rule requiring a trial

court to prepare its own Form 14 and place it in the record when deviating from such forms filed by the parties."

■ We disagree. Nothing in Rule 88.01 supports Renee's position. A trial court deviating from the presumed child support amount calculated per Form No. 14 must find, after consideration of all relevant factors, that the presumed amount is unjust or inappropriate. The standard of review for determining whether such a finding has sufficient evidentiary support is the standard in *Murphy*, 536 S.W.2d at 32[1]. *Buchanan v. Buchanan*, 828 S.W.2d 946, 949 (Mo.App.1992); *Hamilton v. Hamilton*, 817 S.W.2d 937, 939–40[3] (Mo.App.1991).

■ Had the Supreme Court of Missouri wanted a trial court to prepare its own Form No. 14 when it deviates from the presumed child support calculated by a party on such party's Form No. 14, the Supreme Court could have said so in Rule 88.01. It did not. Furthermore, in some dissolution cases it is likely there will be no quarrel regarding calculation of the presumed child support amount on Form No. 14, yet because of the particular circumstances of the case, such amount will be inappropriate. In those cases it would be absurd to require a trial court to prepare its own Form No. 14 mirroring the ones submitted by the parties. Component "(c)" of Renee's first point is denied.

■ Part "(d)" of Renee's first point avers the trial court erred in deviating from the child support calculated per Renee's Form 14 "on the basis of the division of marital property which heavily favored [Barnie] and on the basis that [Barnie] was using a substantial portion of his income to service marital debt, a finding not supported by the evidence."

Renee asserts the trial court awarded her marital property of the aggregate value of $13,804 and awarded Barnie marital property of the aggregate value of $79,836. Although Barnie arrives at a different (and higher) total for the marital property awarded him, the decree is supportive of Renee's arithmetic. Barnie agrees with Renee's total of the value of marital property awarded her.

The decree assigned Renee "marital debt" totaling $7,009.06, and ordered her to pay it and hold Barnie harmless from it. The decree assigned Barnie "marital debt" totaling $226,276, and ordered him to pay it and hold Renee harmless from it.

Using the above figures, the aggregate value of marital property awarded Renee exceeds the aggregate marital debts assigned her by $6,794.94. The aggregate marital debts assigned Barnie exceed the aggregate value of marital property awarded him by $146,440. That is, Renee ends up with a *plus* $6,794.94, and Barnie a *minus* $146,440.

■ Obviously, Renee does not have the financial resources or income-producing ability to pay the marital debts assigned Barnie. If either of the parties can eventually pay them, that party is Barnie. In setting child support, a deviation from the amount calculated per Form No. 14 may be warranted where the non-custodial parent is assigned substantial marital debt. *Buchanan*, 828 S.W.2d at 949[8]. *Cf. Heutel v. Heutel*, 803 S.W.2d 84, 90[5] (Mo.App. 1990). The marital debts assigned Barnie justify deviation from the child support calculated on Renee's Form 14. Part "(d)" of her first point is meritless.

■ The final theory of error in Renee's first point is labeled "(e)." It reads: "[T]his case was tried in ... September, 1990, and the final judgment was not filed until March 31, 1992, [consequently] the trial court erred in deviating from presumed support without conducting a hearing to determine the situation of the parties and the children in 1992, so as to require this Court to exercise its supervisory powers to return the case to the trial court with instructions requiring such and other relief."

We have already noted, with chagrin, the 18–month delay between trial and adjudication.[4] However, Renee cites no case holding such delay requires reversal and re-

4. Footnote 3, *supra.*

mand for redetermination of child support. To so hold would further postpone finality which is already long overdue.

Where a trial court withholds adjudication of a case under submission, remedies exist for litigants to compel the trial court to act. Adoption of the position championed by Renee would, in any child support case where a trial court fails to enter a decree as quickly as a party desires, create a potential ground for reversal. We decline to do so. Renee's contention "(e)" is denied.

Her second point reads:

The trial court erred and abused its discretion in limiting [Renee's] award of maintenance to only one year, and by doing so erroneously declared and applied the law; and entered a judgment which is not supported by substantial evidence and is against the weight of the evidence. Specifically the court erred in that the record is devoid of any evidence showing: (1) either an impending change in [Renee's] financial condition; or (2) a reasonable likelihood, which is not speculation, that [Renee] would become self-supporting in one year. The court further erred in that the substantial and greater weight of the evidence showed that [Renee's] ability to earn a living is at a substantially reduced standard of living from that which she enjoyed during the marriage.

Renee testified that for the two and a half years immediately preceding trial she had "been home with the children." Before that, she worked for Barnie several years as a dental assistant. She avowed she wants to take a two-year college program to become a dental hygienist. She had been "job hunting ... in the dental field."

Renee's lawyer submitted to the trial court a proposed decree awarding Renee nonmodifiable maintenance of $600 per month for 24 months.[5]

The trial court's decree awards Renee $450 per month maintenance for 12 months and specifies, "This award of maintenance is not modifiable."

In the argument that follows her second point, Renee insists the decree should be amended to provide that the maintenance shall continue at $450 per month "unless and until a proceeding for modification is brought and a change is deemed appropriate under [§] 452.370.1," RSMo Cum.Supp. 1990.

Renee's contention that her maintenance should be of unlimited duration is clearly contrary to her position in the trial court, where she asked for only 24 months of nonmodifiable maintenance.

■ A party will not be heard to complain on appeal of an alleged error in which, by his own conduct at the trial, he joined or acquiesced. *Taylor v. Cleveland, C., C. & St. L. Ry. Co.*, 333 Mo. 650, 63 S.W.2d 69, 74–75[15] (1933); *In re Marriage of Medlock*, 749 S.W.2d 437, 440[3] (Mo.App.1988). On appeal, a party is bound by the position he took in the trial court and will not be heard on a different theory. *Medlock*, 749 S.W.2d at 440[4]; *In re Marriage of Kinnick*, 621 S.W.2d 104, 105–06[4] (Mo.App.1981); *In re Marriage of Hunter*, 614 S.W.2d 277, 278[2] (Mo.App. 1981).

■ Having asked the trial court for nonmodifiable maintenance for 24 months, Renee is foreclosed from arguing in this appeal that the trial court erred by failing to award her maintenance of unlimited duration. However, we find no evidence in the record supporting the 12-month limit on Renee's maintenance.

■ A decision to limit maintenance is justified only where substantial evidence exists of an impending change in the financial condition of the parties; at a minimum, there must be substantial evidence to support a reasonable expectation that such a change will occur. *In re Marriage of Vinson*, 839 S.W.2d 38, 43[7] (Mo.App.1992); *Whitworth v. Whitworth*, 806 S.W.2d 145,

---

**5.** The lawyer who represented Renee in the trial court is not the lawyer representing her in this appeal.

148[3] (Mo.App.1991); *May v. May*, 801 S.W.2d 728, 731[3] (Mo.App.1990).

Here, there was no substantial evidence that Renee's financial condition would be any different 12 months after the decree than 24 months after it. Nothing Renee did in the trial court bars her from arguing on appeal that the trial court erred in limiting the maintenance to 12 months instead of the 24 months she requested.

Finding no substantial evidence to support a 12-month cap on maintenance, we hold the trial court erred in failing to award it for 24 months, the period requested by Renee. Exercising our authority under Rule 84.14 to "give such judgment as the court ought to give," we modify the decree by lengthening the duration of Renee's $450-per-month maintenance from 12 months to 24 months. In all other respects, the decree is affirmed. Costs of this appeal are taxed half against Renee and half against Barnie.

PARRISH, C.J., and SHRUM, J., concur.