In re the Marriage of V____ A____ E____ and D____ A____ E____.

V____ A____ E____, Petitioner–Respondent,

v.

D____ A____ E____, Respondent–Appellant,

and

J____ D____, Co–Respondent.

No. 18492.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 8, 1994.

Opinion Denying Request to Amend Opinion March 2, 1994.

David G. Neal, Eminence, for respondent-appellant.

Frederick W. Martin III, West Plains, for petitioner-respondent.

CROW, Judge.

D_____ A_____ E_____ ("Husband") appeals from a decree dissolving his marriage to V_____ A_____ E_____ ("Wife"). He maintains the trial court erred in: (1) entering, without any change, the proposed decree submitted by Wife's lawyer; (2) awarding "custody" of the parties' two children to Wife; (3) granting him an insufficient "visitation schedule" with the children; (4) awarding Wife too great a share of the marital property; and (5) setting child support without adopting the computations of either party and without indicating how the amount was calculated.

Husband and Wife married June 2, 1984. The union produced two sons, born August 18, 1985, and June 9, 1987, respectively. The parties separated February 7, 1991.

On April 29, 1992, more than 14 months after the separation, Wife gave birth to a daughter. According to Wife, the daughter was sired by J_____ D_____ ("Paramour"). Paramour was joined as a party, and a guardian ad litem was appointed for the daughter.

Evidence was heard on two occasions, June 12, 1992, and August 14, 1992. At the time of the first hearing, Wife was age 26; Paramour was age 25. At the time of the second hearing, Husband was age 33.

Paramour testified he believes he is the daughter's father and informed the hospital of this when she was born.

Husband testified he had no sexual contact with Wife after the separation, hence he is not the daughter's father. Husband asked the trial court to declare Paramour the daughter's father.

The decree declares Wife and Paramour are the daughter's parents, awards Wife "custody" of the daughter, subject to "reasonable visitation rights" of Paramour, and orders Paramour to pay Wife $125.25 per month child support for the daughter. No appeal was taken by Wife, Paramour, or the daughter's guardian ad litem; therefore, the provisions of the decree regarding the daughter are unchallenged.

■ On the contested issues of division of marital property and "custody," "visitation" and child support for the sons, the trial court made no findings of fact or conclusions of law, none having been requested. In such circumstances, all fact issues are deemed found in accordance with the result reached. Rule 73.01(a)(2) [1]; *In re Marriage of Swofford*, 837 S.W.2d 560, 563[7] (Mo.App.S.D. 1992); *Irwin v. Irwin*, 678 S.W.2d 861, 862[2] (Mo.App.W.D.1984). Accordingly, we accept as true the evidence and inferences from it favorable to the trial court's decree and disregard contrary evidence. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654[2] (Mo. banc 1989).

Before the separation, the parties and their sons were living in a mobile home in Howell County. The parties bought it in 1990 (according to Wife) or 1989 (according to Husband). Wife and the sons continued residing there after the separation. They were still there, along with the daughter, at time of trial.

Sometime after the separation, Husband became pastor of a church in Taney County. At time of trial, he was residing in a mobile home near the church, owned by it and furnished to him free as a parsonage. The church pays Husband $500 per month, and he receives $100 per month from his father. In addition to his clerical duties, Husband was attending College of the Ozarks, expect-ing to receive a degree in May, 1993, with a major in psychology and a minor in theology.

At time of trial, Wife had just begun employment at a factory, earning $4.35 per hour for a 40–hour week. She testified she plans to marry Paramour, adding, "[W]e've already got our rings picked out and everything." Asked where they will live, Wife answered: "Right now, we plan on living in the mobile home because of the children. It's their home as well."

Paramour testified he plans to marry Wife after the dissolution. Asked where they will live, Paramour replied, "Well, if she gets the trailer in the divorce, I imagine we'd live there for a while, I guess."

Paramour is employed as a heavy equipment operator, having held that job three and a half years. He has a four-year-old child by a marriage that was dissolved in December, 1990. That decree requires him to pay his ex-wife $200 per month child support. At time of trial, Paramour was current on that obligation.

Further evidence will be set forth where relevant to particular assignments of error.

The trial court granted each side the opportunity to submit a proposed decree. According to the docket sheet, the deadline was September 4, 1992.

In their respective briefs, the parties acknowledge that the trial court entered the proposed decree submitted by Wife's lawyer, *in toto*. The docket sheet does not show the date Wife's lawyer submitted it, but the trial court filed it October 15, 1992.

Nothing on the docket sheet indicates Husband's lawyer tendered a proposed decree. However, attached to Husband's brief is a 14–page document identified by Husband as the proposed decree he submitted. It bears a filing stamp dated December 24, 1992, more than two months after the trial court entered the decree. One inference from this is that Husband's lawyer did not tender his proposed decree within the deadline established by the trial court.

---

1. Rule references are to Missouri Rules of Civil Procedure (1993).

Husband's first point asserts the trial court erred in entering the proposed decree submitted by Wife's lawyer in that "the judgment is so favorable to [Wife] and so damaging to [Husband] it shows the judge abandoned his judicial function in the trial process and ceased to be an impartial determiner of the facts and issues but deferred entirely to [Wife] and permitted her to fashion the decree as she wanted it and not based upon the evidence." In a measured understatement, Husband says, "The manner in which the Judgment was submitted, signed, and placed in effect does not inspire confidence in the judicial system...."

█ It has been repeatedly held that a trial court's entry of a decree of dissolution of marriage proposed by one of the litigants is not *per se* erroneous. *Roberts v. Roberts,* 800 S.W.2d 91, 93[4] (Mo.App.W.D.1990); *Kreitz v. Kreitz,* 750 S.W.2d 681, 684[1] (Mo.App.E.D.1988); *Ederle v. Ederle,* 741 S.W.2d 883, 884–85[1] (Mo.App.E.D.1987); *Binkley v. Binkley,* 725 S.W.2d 910, 911 n. 2 (Mo.App. E.D.1987). Although entering such decrees has been criticized, *Kreitz,* 750 S.W.2d at 684[1]; *Binkley,* 725 S.W.2d at 911 n. 2, such decrees are reviewed by the same standard as other dissolution decrees. *Kreitz,* 750 S.W.2d at 684; *Ederle,* 741 S.W.2d at 885[3]. The decree will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *T.B.G.,* 772 S.W.2d at 654. We therefore deny Husband's first point and apply that standard of review to his others.

Husband's second point attacks the provision regarding custody of the two sons.

The decree awards Husband and Wife joint legal custody of the sons; it awards Wife "physical custody" of the sons, subject to "visitation rights" of Husband as follows:

Every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m.; on alternating major holidays; and for two periods of two weeks each during the Summer vacation.

This Court has characterized a similar arrangement as "joint physical custody" as defined by § 452.375.1(2), RSMo Cum.Supp. 1990. *In re Marriage of Johnson,* 865 S.W.2d 412, 415[1] (Mo.App.S.D.1993). Using that terminology, we shall treat Husband's second point as a contention that the trial court erred in its apportionment of joint physical custody in that the periods of time during which the sons will reside with Wife are too long and too frequent, while the periods during which the sons will reside with Husband are too short and too infrequent.

Husband asserts the joint physical custody plan imposed by the trial court is not supported by substantial evidence and is against the weight of the evidence because, in his words:

(A) The Court gave [Wife] preferential consideration solely because she is the mother, which is not permitted;

(B) [Wife] became pregnant by [Paramour] and bore his child while she was still married to [Husband], which reflects unfavorably on her judgment, morals, and character, and renders her unsuitable to have primary custody of the [sons];

(C) [Wife] has introduced [Paramour] in the environment of the [sons] and he will be a major influence on their lives and their values when the evidence shows he is a regular user and abuser of alcohol, has numerous traffic offenses, including D.W.I.'s, had his license suspended, has spent time in jail, and is otherwise unsuited to be in the [sons'] home;

(D) Comparing the respective environments of the parties and what each has to offer the [sons], [Husband] has the superior circumstances and future prospects and he should have been awarded custody of the [sons] for that reason; and

(E) [Wife] has been unstable and undependable, has had emotional problems requiring medication, she has been unemployed for extended periods, and has subsisted on welfare for no apparent reason, all proving she is unsuitable to have custody of the [sons], while [Husband] is regularly employed, is completing a college degree, and has suitable housing and other circumstances with which to properly raise the [sons].

In support of contention "(A)," Husband cites § 452.375.6, RSMo Cum.Supp.1990, which provides that as between the parents of a child, no preference may be given to either parent in the awarding of custody because of that parent's age, sex, or financial status, nor because of the age or sex of the child. Husband's theory of error, as we comprehend it, is that if Wife is given no preference, the evidence is insufficient to support the physical custody plan imposed by the trial court. Consequently, reasons Husband, the trial court must have given Wife preference because of her gender. This, says Husband, is an erroneous application of the law, requiring reversal.

Obviously, contention "(A)" hinges on whether the evidence, disregarding Wife's gender, is sufficient to support the physical custody plan imposed by the trial court.

As pointed out by Husband in contention "(B)," Wife conceived the daughter by Paramour, and bore her, during the marriage. In *Hartig v. Hartig*, 738 S.W.2d 160 (Mo.App. E.D.1987), the wife, a year after separating from the husband, gave birth to a child sired by a man with whom she was cohabiting. The trial court awarded primary custody of the parties' four minor children to the husband. On appeal by the wife, the Eastern District of this Court held that while sexual misconduct may not be sufficient in and of itself to deprive a parent of custody of the children, morals are a pertinent factor to be taken into account in determining whose custody will serve the best interests of the child. *Id.* at 161[2]. The Eastern District held there were other factors besides the mother's liaison that favored a finding that it was in the best interests of the children to award the father primary custody. *Id.* at 161. The custody order was affirmed.

However, in *Massman v. Massman*, 784 S.W.2d 848 (Mo.App.E.D.1990), the result was different. There, as in *Hartig*, the wife bore a child by another man after the separation but before the decree. Nonetheless, the trial court awarded sole physical and legal custody of the parties' only child to the wife. Affirming the custody order, the Eastern District of this Court said:

Although morals are a factor to consider in determining custody, sexual misconduct is not sufficient in and of itself to deprive a parent of custody. *Hartig v. Hartig*, 738 S.W.2d 160, 161 (Mo.App.1987); *M.B. v. J.W.B.*, 628 S.W.2d 358 (Mo.App.1981). "The issue is not condemnation or approval of a moral standard but whether the conduct is detrimental to the child's welfare." *In re Marriage of Newberry*, 745 S.W.2d 796, 797 (Mo.App.1988). There must be evidence that the parent's conduct has had or will have an adverse impact on the child. *Id.; Rising v. Rising*, 608 S.W.2d 510, 512 (Mo.App.1980).

*Massman*, 784 S.W.2d at 849[1].

■ *Hartig* and *Massman* illustrate the principle that an appellate court will not disturb a trial court's custody award unless it is manifestly erroneous and the welfare of the child requires some disposition other than that made by the trial court. *In re Marriage of Goostree*, 790 S.W.2d 266, 267 (Mo.App. S.D.1990), and cases cited there. In *Hartig*, the father won the custody battle in the trial court; in *Massman*, the mother won in the trial court. In each case, the appellate court affirmed.

Obviously, Wife's liaison with Paramour, which produced the daughter, is a factor in the custody equation, but only one of many which must be weighed. § 452.375.2, RSMo Cum.Supp.1990.

In contention "(C)," Husband assails Paramour's character and asserts Paramour will be a major adverse influence on the sons if they reside with Wife. While Paramour undeniably has some demerits on his record, Husband's contention "(C)" overstates their severity.

Paramour's ex-wife, presented as a witness by Husband, testified they were married a little over three and a half years. According to her, he "drank a lot and ran around and wasn't home much." However, he never drank at home and never stayed away all night. She recalled he was arrested once for driving while intoxicated during the marriage, but "it was thrown out and he wasn't charged with it." Additionally, he sees his child about once a week and has never shown signs of drinking on arrival to pick up the

child. The ex-wife knew of no alcohol-related problems regarding Paramour's employment and, as noted earlier, he is current on his child support.

Paramour's supervisor at work testified Paramour is a reliable person and does a good job.

Paramour testified that except for motor vehicle offenses, he has no criminal convictions. During the eight years preceding trial he received four speeding tickets and one for careless and imprudent driving. In 1986 he was convicted of driving while intoxicated in Missouri, spent five weekends in jail, and lost his driver's license for 30 days. Additionally, he was once arrested in Arkansas for driving while intoxicated and paid a fine.

Husband's contention "(E)," which condemns Wife, also overstates the evidence. While there were periods during the marriage when Wife was unemployed, it appears she was employed a majority of the time. She testified that a year after the marriage she began working at a country store. After that, she worked at a laboratory in Arkansas, then at a factory, and later at another factory. In between, she bore two children. Asked who mainly supported the family, Wife testified: "I believe it was me that supported the family. I worked while he went to school."

Wife conceded she was unemployed from September, 1991, until June, 1992, but explained she was pregnant until April 29, 1992, when the daughter was born. On June 8, 1992, Wife began working at the factory where she was employed at time of trial.

Wife has family members in the area where she resides: her mother, a sister and a brother. Husband's family is some 20 miles away. Neither Wife nor Husband has relatives in Taney County where Husband was residing at time of trial.

The eldest son had completed kindergarten in Howell County and would start the first grade there when school began.

There was evidence that before the separation, Wife performed a majority of the day-to-day tasks in caring for the sons. In his brief, Husband concedes each party is fully capable of raising the sons.

■ We have carefully studied the 447–page transcript and the exhibits accompanying it. While there is evidence that would arguably have supported a joint physical custody plan different than the one imposed by the trial court, we are unpersuaded that the trial court's plan is manifestly erroneous or that the welfare of the sons requires some different plan. In reaching this conclusion we have considered evidence in the record adverse to Husband which we need not recount in this opinion.

We hold the trial court's joint physical custody plan for the sons is supported by substantial evidence and is not against the weight of the evidence. In so deciding, we have given no preference to Wife because of her gender. Consequently, Husband's contention "(A)" supplies no basis for disturbing the joint physical custody plan. We further hold that no error of law appears regarding the joint physical custody plan, and that an opinion setting forth all the evidence on the physical custody issue would have no precedential value. Accordingly, we affirm the joint physical custody plan in compliance with Rule 84.16(b)–(1) and (5).

■ Husband's third point asserts the trial court's joint physical custody plan does not grant him enough time with the sons. According to the evidence, Husband had the sons with him at his residence almost every weekend after the separation. Husband maintains the trial court should have allowed that to continue.

Wife testified that inasmuch as she works during the week, she would like some weekends with the sons. Additionally, it is about a two-hour drive, one way, between Husband's residence and Wife's residence.

Given these factors, we deny Husband's third point. As explained in our discussion of his second point, we hold the trial court's joint physical custody plan is supported by substantial evidence and is not against the weight of the evidence, that no error of law appears regarding it, and that further discussion of the evidence pertinent to it would have no precedential value.

Husband's fourth point, as we grasp it, maintains the trial court erred in dividing the marital property in that Wife received all but two "insignificant items." In the argument following the point, we are told those two items are a bed and a vacuum cleaner.

The decree awards Wife, as marital property, the mobile home, a 1979 Oldsmobile, and "the other items of marital property presently in her possession." The decree awards Husband, as marital property, a Dodge automobile and "the other items of marital property presently in his possession."

While it would normally be difficult to review such a vague division of property, the evidence frames the issue clearly enough for us to do so. Viewed favorably to Wife, the evidence establishes the existence of the following items of marital property:

(1) The mobile home, valued by Wife at $10,000 and by Husband at $11,500;

(2) The Oldsmobile, valued by both parties at $1,000;

(3) The Dodge, valued by Wife at $100;

(4) A pickup, valued by Wife at $800; Husband testified it had been sold for $1,200;

(5) A vacuum cleaner—there is a debt owed on it and the parties agree the "equity" is $300;

(6) A bed, valued by Husband at $35.

As reported above, the decree awards Wife the mobile home and the Oldsmobile. Assigning the mobile home the value most favorable to Wife ($10,000), the net aggregate value of the mobile home and the Oldsmobile is $11,000.

The decree awards Husband the Dodge. Although the decree does not mention the pickup, both parties testified there was one, and Husband admitted it was sold for $1,200 and he intended to keep the proceeds. Husband also admitted he had possession of the vacuum cleaner and the bed. The net aggregate value of the four items mentioned in this paragraph is $1,635.

Husband presented evidence regarding the "other items of marital property" in Wife's possession; however, the trial court was not obliged to believe that evidence. *T.B.G.*, 772

S.W.2d at 654[1]. Accordingly, we disregard that evidence except for six items which Wife admitted she had. They are:

| Item | Wife's value | Husband's value |
| --- | --- | --- |
| Two end tables | $ 25 | $ 25 |
| Hutch | 100 | 100 |
| Baby bed | 50 | 50 |
| File cabinet | 50 | 50 |
| Washer & Dryer | 75 | 100 |
| Quilts | 300 | 300 |

Using Wife's figures, the net aggregate value of these six items is $600. This means that out of a marital estate totaling $13,235, the decree awards Wife assets with a net aggregate value of $11,600 (88 percent) and awards Husband assets with a net aggregate value of $1,635 (12 percent).

In an action for dissolution of marriage, division of marital property is left to the sound discretion of the trial court, and its decision should be upheld unless an abuse of discretion is shown. *Colabianchi v. Colabianchi*, 646 S.W.2d 61, 64[3] (Mo. banc 1983). Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Belleville v. Director of Revenue*, 825 S.W.2d 623, 624–25[2] (Mo. banc 1992).

The factors to be considered by a trial court in dividing marital property appear in § 452.330, RSMo Cum.Supp.1988. They include the desirability of awarding the family home or the right to live in it for reasonable periods to the spouse having custody of any children, the contribution of each spouse to the acquisition of the marital property (including the contribution of a spouse as a homemaker), and the conduct of the parties during the marriage.

Wife apparently anticipated having to pay Husband something if she were awarded the mobile home. Her testimony included this:

Q. You are asking the Court to award you the mobile home; is that correct?

A. That's correct.

Q. And that's basically so that you and the children can continue to live in the mobile home?

A. Yes.

Q. Now, if the Court feels that that is too valuable an asset to award to you in the entirety, would you ask the Court to award your husband ... a lump sum as his part of that property, and allow you to pay that off in monthly installments?

A. Yes.

■ We find no substantial evidence to support the trial court's disparate division of marital property, even viewing the evidence favorably to Wife, as we must. The trial court's division is arbitrary and unreasonable, shocks the sense of justice, and indicates a lack of careful consideration. *Belleville*, 825 S.W.2d at 624–25[2].

We do not fault the trial court's decision to award the mobile home to Wife, as she will have the sons with her more than Husband will have them with him. However, on the evidence here, we hold it was an abuse of discretion to award Husband anything less than one-third of the marital property.

We are mindful that if reasonable persons can differ about the propriety of the action taken by the trial court, it cannot be said that the trial court abused its discretion. *Anglim v. Missouri Pacific R. Co.*, 832 S.W.2d 298, 303[8] (Mo. banc 1992), *cert. denied*, ── U.S. ──, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992). We are positive that on the record here, no reasonable person would conclude Husband should receive less than one-third of the marital property. There is no evidence that Wife contributed more than Husband toward acquisition of the marital property, and there is no evidence that Husband's conduct was a greater factor than Wife's in the failure of the marriage. The parties' respective economic circumstances do not warrant the trial court's lopsided division. We have read the cases cited by Wife on the economic circumstances factor. The facts in those cases are too different from the facts here for those cases to apply.

According to our calculations, one-third of the net aggregate value of the marital property is $4,411.67. Husband received marital property of the net aggregate value of $1,635,

which is $2,776.67 short of one-third. We therefore reverse, in part, the portion of the decree dividing the marital property and remand the case to the trial court with directions to enter an amended decree ordering Wife to pay Husband $2,776.67, the sum necessary for an award of one-third of the marital property to him. Said sum shall bear interest per § 408.040.1, RSMo Cum. Supp.1993.

The trial court is authorized to order that said sum be paid in periodic installments consistent with Wife's financial circumstances. The trial court is directed to award Husband a lien on the mobile home to secure payment. Counsel for the parties may offer their suggestions to the trial court regarding the proper method of doing this. The amended decree should provide that if Wife sells the mobile home before the amount due Husband has been fully paid, the unpaid balance shall be paid in lump sum from the sale proceeds.

Husband's fifth, and final, point attacks the provision in the decree ordering him to pay child support to Wife of $113 per month per child for the sons.

At trial, Wife presented a Form 14[2] based on the assumption that she would be the "custodial parent" of the sons. The document was designated "Petitioner's Exhibit 4," and showed a presumed child support amount of $317 per month due Wife from Husband.

Husband also presented a Form 14 at trial, designated "Respondent's Exhibit J." It was based on the assumption that he would be the "custodial parent," and showed a presumed child support amount of $233 per month due him from Wife.

Rule 88.01(e) provides there is a rebuttable presumption that the amount of child support calculated pursuant to Form 14 is the amount of child support to be awarded in any proceeding for dissolution of marriage. The Rule further provides it is sufficient in a particular case to rebut that presumption if the court enters a written finding or a specif-

─────

**2.** Civil Procedure Form 14 and the directions for its use appear at pages 380–84, Missouri Rules of Court (1993).

ic finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate.

Here, the trial court made no finding that the amount of child support calculated pursuant to Form 14, after consideration of all relevant factors, was unjust or inappropriate. Yet, the child support awarded Wife for the sons is neither the amount calculated on Petitioner's Exhibit 4 nor the amount that would be due Wife as "custodial parent" using the figures on Respondent's Exhibit J.

Wife and Husband disagreed on the amounts to be shown as the monthly gross income for each on Form 14. Additionally, Petitioner's Exhibit 4 included an amount for Wife's reasonable work-related child care costs. In *Tuning v. Tuning,* 841 S.W.2d 264, 267[4] (Mo.App.S.D.1992), this Court said:

> If the parties do not agree upon the factually and legally proper amounts to be used to complete Form 14, then each party should submit a completed Form 14 embodying his or her contention of the factually and legally correct amounts. This will frame the factual and legal issues. The trial court must then determine those issues and calculate presumed child support in the manner provided by Form 14.

For review on appeal, the trial court's decisions in regard to Form 14 calculations must be able to be determined from the record. *Umphenour v. Umphenour,* 831 S.W.2d 764, 767 (Mo.App.W.D.1992).

■ On the record here, we cannot determine whether the trial court used Form 14 in setting the child support for the sons, hence we obviously cannot determine what calculations, if any, the trial court made per Form 14. We therefore reverse the portion of the decree awarding Wife child support for the sons and remand the case to the trial court with directions to determine child support in compliance with Rule 88.01 and Form 14. At a minimum, the trial court should determine, on the record, the proper amounts to be utilized on the appropriate lines of Form 14.

Wife, citing *In re Marriage of Short,* 847 S.W.2d 158, 165–66 (Mo.App.S.D.1993), asserts a trial court is not required to prepare its own Form 14 or explain its calculations.

Wife misreads *Short.* There, only the mother presented a Form 14 at trial. The trial court found the amount of child support calculated per Form 14 was, after consideration of all relevant factors, inappropriate. *Id.* at 163–64. The trial court set forth the reasons for its determination, and awarded less child support than shown on the mother's Form 14. On appeal, the mother argued the trial court should have prepared its own Form 14. This Court held otherwise. *Id.* at 166.

The crucial difference between *Short* and the instant case is that in *Short,* the trial court refused to award the child support calculated per Form 14 and set forth in the decree the reasons for that decision. Had the trial court prepared a Form 14 in *Short,* the form obviously would not have shown the amount of child support awarded by the court, as the court declined to award the Form 14 amount. Requiring the trial court to perform such a needless task would have been absurd.

Here, as noted earlier, we cannot determine whether the trial court used Form 14 in setting child support for the sons, thus we cannot determine what calculations, if any, the trial court made. Being unable to discern how the trial court determined child support for the sons, we cannot review that determination. This necessitates reversal of the child support award for the sons. *Bell v. Gilliam,* 852 S.W.2d 198, 202–03[7] (Mo.App. S.D.1993).

Parenthetically, we note that on remand, depending on the evidence the trial court believes, Form 14 may produce a child support award to Wife for the sons greater than that awarded in the decree. Wife illustrates this in her brief. We assume Husband's lawyer has assessed that risk in pressing for reversal of the child support award for the sons.

The decree of dissolution of marriage is affirmed except: (1) the division of marital property is reversed in part and the trial court is directed on remand to order Wife to pay Husband $2,776.67, consistent with the details set forth earlier in this opinion, and (2) the child support award to Wife for the sons is reversed and the trial court is directed on remand to calculate child support for

the sons in compliance with Rule 88.01 and Form 14, and to make an adequate record for appellate review of such determination. The cause is remanded for those two tasks and entry of an amended decree embodying them.

FLANIGAN, P.J., concurs.

GARRISON, J., files separate opinion concurring in part and dissenting in part.

GARRISON, Judge, concurring in part and dissenting in part.

I concur with the majority opinion except with reference to a part of the discussion concerning Husband's fourth point. While I agree that the trial court abused its discretion with reference to the division of marital property, I respectfully dissent concerning the percentages applied to that distribution by the majority opinion.

The majority opinion directs the trial court to amend its decree so that Husband shall receive one-third of the value of the marital property. As I understand that opinion, the choice of one-third is not necessarily what this court might have ordered based upon the evidence and the law, but rather, is a percentage with which no reasonable person would disagree under the evidence in the instant case.

Rule 73.01 provides that, upon appellate review, "[t]he court shall review the case upon both the law and the evidence as in suits of an equitable nature." In addition, under Rule 84.14, "[t]he appellate court shall ... give such judgment as the court ought to give. Unless justice otherwise requires, the court shall dispose finally of the case...." *See also Wallace v. Wallace,* 839 S.W.2d 354, 359 (Mo.App.1992), and *Campbell v. Campbell,* 825 S.W.2d 319, 322 (Mo.App.1992). If we conclude, as we have in the instant case, that the trial court abused its discretion, I believe we are obligated to enter the judgment the trial court should have entered. *Tygett v. Tygett,* 639 S.W.2d 282, 285 (Mo. App.1982). Based upon these principles and the evidence in the instant case, I believe that the appropriate division of marital property would result in its being evenly divided.

In all other respects, I concur with the majority opinion.

## ON REQUEST BY APPELLANT'S COUNSEL TO DELETE PORTION OF OPINION

PER CURIAM.

Neither party filed a motion for rehearing or, alternatively, for transfer to the Supreme Court of Missouri within the time allowed. However, counsel for Appellant (Husband) requested, in writing, that we delete the paragraph of the principal opinion which states it is inferable that he did not tender a proposed decree within the deadline established by the trial court. In support of the request, Husband's counsel presents copies of correspondence (not appearing in the record) indicating he tendered a proposed decree within an extended deadline fixed by the trial court (not appearing in the record).

We decline to delete anything from the opinion, as Husband's counsel has failed to show anything in the opinion is contrary to the record. However, we acknowledge that had the documents presented by Husband's counsel appeared in the record, they would have supported a finding that he tendered a proposed decree to the trial court within the extended deadline. The outcome of this appeal would have remained the same.